IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DIEDRA A. LINTZ,

    Plaintiff,

    v.

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

    Defendant.

_____/

No. 2:09-cv-01907 GEB KJN PS

<u>ORDER</u>

Presently before the court is defendant's motion to dismiss plaintiff's Second Amended Complaint on the grounds that: (1) plaintiff has not met her burden to demonstrate a waiver of defendant's sovereign immunity as to plaintiff's claims brought pursuant to 42 U.S.C. §§ 1981 and 1983 and the Americans With Disabilities Act ("ADA"); and (2) as to the remainder of plaintiff's claims, the Second Amended Complaint fails to state a claim on which relief can be granted. (Dkt. Nos. 15, 16.) The court heard this matter on its law and motion calendar on June 10, 2010. (Dkt. No. 20.) Assistant United States Attorney J. Earlene Gordon appeared on behalf of defendant. Plaintiff, who is proceeding without counsel, appeared on her own behalf.

The undersigned has fully considered the parties' briefs, oral arguments, and the appropriate portions of the record in this case. For the reasons that follow, the undersigned

1

grants defendant's motion to dismiss, in part, and dismisses the remainder of plaintiff's claims in accordance with plaintiff's request made at the June 10, 2010 hearing.

I.  VOLUNTARY DISMISSAL OF CLAIMS

At the June 10, 2010 hearing, plaintiff expressly stated that she no longer wished to pursue several of her claims and requested that the following claims be dismissed without prejudice: claims brought pursuant to 42 U.S.C. §§ 1981 and 1983; claims brought pursuant to the ADA; and claims of discrimination on the basis of her age, sex, and religion. Accordingly, the undersigned will dismiss those claims without prejudice, see Fed. R. Civ. P. 41(a)(1)(A)(I), and will not address defendant's motion to dismiss as it relates to those claims. Plaintiff's remaining claims are for: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 et seq.; and (2) violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.

II.  FACTUAL BACKGROUND

Plaintiff is a former employee of the United States Postal Service ("USPS"), who has suffered various on-the-job injuries spanning from 1992 through 2007. Although her Second Amended Complaint alleges facts dating as far back as 1992, at the June 10, 2010 hearing, plaintiff stated that her claims arise out of events occurring after approximately June 25, 2007.[1]

Because the Second Amended Complaint is not entirely clear as to which facts are actually relevant to plaintiff's claims, the undersigned recounts the allegations in the Second Amended Complaint below in perhaps more detail than would otherwise ordinarily be warranted. The undersigned informs plaintiff, as he did at the hearing, that any subsequent amended complaint should be "cleaned up" such that it is clear to defendant and the court which facts are

---

[1] Adding to the court's confusion is that plaintiff has filed two claims before the Equal Employment Opportunity Commission ("EEOC"). Claim 4F-956-0143-07 appears, based on the Second Amended Complaint and plaintiff's statements at the June 10, 2010 hearing, to relate to events that took place in 2007 and earlier. Claim 4F-940-0183-08, which plaintiff stated at the hearing is the basis of her present claims, appears to relate to events taking place in 2008 and later.

1  relevant to the present dispute and form the basis of plaintiff's claims.

2  Plaintiff was employed in 1992 by USPS at the Mountain View, California facility
3  as a letter carrier.  (Second Am. Compl. at 4.)  In August 1992, plaintiff suffered an on-the-job
4  injury, consisting of a left knee strain, right hip contusion, and lumbar strain.  (Id.)  Plaintiff filed
5  a claim with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"),
6  was placed on limited duty, and intermittently missed work over the subsequent two years.  (Id.)

7  In May 1994, plaintiff injured her right shoulder and neck while on the job and
8  filed another worker's compensation claim.  (Id.)  Plaintiff was off of work for two and one-half
9  years while participating in vocational rehabilitation and training through OWCP.  (Id.)  Her
10 treating physician ultimately determined that as a result of plaintiff's injuries, plaintiff was
11 permanently unable to perform the duties of her position as a mail carrier.  (Id.)

12 In 1996, during her rehabilitation process, plaintiff was offered a modified duty
13 position as an Express Mail Analyst in San Francisco, working four hours per day.  (Id.)  At the
14 time of this job offer, plaintiff's medical restrictions included "limited squatting, kneeling,
15 bending, reaching above the shoulders, twisting, and lifting over five pounds."  (Id. at 5.)
16 Plaintiff ultimately completed an approved OWCP vocational rehabilitation plan.  (Id.)

17 In March 2000, plaintiff accepted a permanent position as a "Postal Vision
18 Coordinator/Editor/Trainer."  (Id.)  Plaintiff was placed into USPS Corporate Relations, which is
19 now referred to as Public Affairs and Communication, located in San Francisco, California.  (Id.)
20 Plaintiff performed work as a Postal Vision Coordinator until 2005, when her treating physician
21 advised her that she could increase her work hours.  (Id.)  Also in 2005, USPS agreed to move
22 Postal Vision operations to Sacramento, California, and plaintiff worked some days in San
23 Francisco and some days in Sacramento.  (Id. at 5-6.)

24 In May 2007, plaintiff was contacted by the Postal Inspection Service in
25 connection with an allegation that she had falsified her manager's signature payroll time sheets.
26 (Id. at 6.)  Through an investigative interview process, plaintiff learned for the first time that her

3

position as a Postal Vision Coordinator was an "ad-hoc position (as needed)." (Id.) The investigation also revealed that plaintiff had not had a supervisor since 2005, and "action was immediately begun" to relocate plaintiff's position to San Francisco. (Id.)

As of June 1, 2007, plaintiff began commuting to San Francisco, which consisted of a daily commute of 225 miles per day. (Id.) Plaintiff was informed, on July 3, 2007, that personnel changes, lack of available supervision, and budgetary constraints made it impossible to continue her "ad hoc assignment." (Id.)

Meanwhile, on June 22, 2007, plaintiff had suffered another on-the-job injury, and her request for treatment was approved by the agency. (Id.) Her treating physician issued a medical report, dated June 25, 2007, in which he concluded that plaintiff's commute had contributed to the aggravation of her prior cervical condition. (Id.) Plaintiff filed another worker's compensation claim with OWCP. (Id.) Before plaintiff received additional treatment, OWCP withdrew the previously granted authorization for medical treatment. (Id. at 7.) In a letter dated August 8, 2007, however, OWCP advised plaintiff that authorization for her treatment had been reinstated and would continue until August 25, 2007. (Id.) Plaintiff alleges that she was without medical treatment from June 25, 2007 to August 8, 2007. (Id.)

Additionally, defendant had sent a letter to OWCP, dated July 2, 2007, contesting plaintiff's 2007 worker's compensation claim. (Id.) OWCP advised defendant that "[t]he information submitted is insufficient to make a decision on this case," and advised defendant to continue plaintiff's regular pay for the period of her disability, not to exceed 45 days.[2] (Id.) On August 6, 2007, defendant advised plaintiff by letter that her pay had been continued from the time of her injury through August 5, 2007, and provided her with a form "to claim compensation for the remainder of your disability from work." (Id.) Additionally, the Mountain View

---

[2] In October 2007, OWCP denied plaintiff's worker's compensation claim. (Id. at 13.) Although plaintiff alleges that this claim was "remanded back to OWCP in June 2009" (id.), the Second Amended Complaint does not indicate if or how this claim was resolved.

4

compensation unit was directed to continue plaintiff's pay for up to a maximum of 45 days with proper medical certification. (Id. at 9.) Plaintiff alleges that defendant did not provide her with the "Continuation of Pay" identified in the August 6, 2007 letter identified above. (Id. at 8, 9.) She also alleges that this lack of pay initiated or caused her non-payment of health plan premiums. (Id. at 8.)

Meanwhile, plaintiff received a statement from an EEO investigator in EEOC case number 4F-956-0143-07, dated August 3, 2007, which stated that her Postal Vision Coordinator position domiciled in Sacramento was temporary and that this "ad hoc" assignment had been ended because of "budget cuts and no justification to keep a person detailed in that position full-time." (Id. at 8.) It further stated that plaintiff's assignment had been ended effective July 9, 2007, and that plaintiff had been requested to return to her permanent reporting office in Mountain View, California. (Id.) The EEO investigator's statement also conveyed that on June 22, 2007, a Permanent Limited Duty Job Offer had been made to plaintiff, and plaintiff had accepted the offer under protest. (Id.)

The Second Amended Complaint confirms elsewhere that plaintiff was offered a limited duty job on June 22, 2007, and that she accepted it under protest. (Id. at 10.) It further alleges, however, that plaintiff's treating physician issued a medical report on June 25, 2007, which was transmitted to OWCP and defendant, stating that plaintiff had been given a job offer for a position she could not do, but that "[o]ther aspects of the job offer including Lobby Director were manageable." (Id.) The physician further stated that plaintiff probably could have continued performing her previous work as a Postal Vision Coordinator "in her living proximity." (Id.) Plaintiff also alleges that the new job offer only considered the restrictions resulting from her 1992 injury, and did not account for restrictions resulting from her 1994 injury. (Id.)

Although unclear from the operative complaint, at some point plaintiff filed a claim for unemployment benefits with the State of California Employment Development

5

Department ("EDD"). (Id. at 9, 11.) In May 2008, EDD notified plaintiff that defendant was appealing her eligibility for unemployment benefits on the grounds that plaintiff had "quit" her employment and might not be able to work for health reasons. (Id. at 11.) Plaintiff alleges that defendant's motivation for contesting her claim for benefits was "her several injuries over the years that caused her to be partially disabled from performing some type of work." (Id. at 9.)

Following a hearing, EDD concluded that plaintiff was entitled to benefits because she was laid off from work because of a lack of available supervision and budget restraints, and a layoff is not a voluntary leaving or a discharge for misconduct. (Id. at 11-12.) In this section of plaintiff's Second Amended Complaint, plaintiff "claims retaliation based on prior EEOC activity because her complainant [sic] is a continuing discriminatory violation of her rights raised in EEOC claim 4F-956-0143-07." (Id. at 12.)

Subsequently, plaintiff received a letter, dated July 16, 2008, entitled "Notice of Proposed Separation/Disability." (Id. at 13.) This notice stated that it was based on "Physical Inability to Meet the Requirements of the Position, City Letter Carrier."[3] (Id. at 13-14 (emphasis omitted).) In response, plaintiff's physician sent a letter to Postmaster Debra Powell stating:

> In view of the injuries noted above this patient was placed into the Vocational Rehabilitation Program that resulted in a permanent placement status as a Postal Vision Coordinator. If under any circumstances the permanent position is [sic] longer available; it is my recommendation that Deidra Lintz's original vocational rehabilitation status be considered for any future job placement within the U.S. Postal Service.

(Id. at 14.) Plaintiff alleges that this letter was an attempt to begin "some discussion regarding reasonable accommodation." (Id.) She further alleges that defendant "has provided no evidence" that it attempted to provide a reasonable accommodation. (Id. at 15.)

In a section of the Second Amended Complaint entitled "AGE," plaintiff alleges

---

[3] In a section entitled "Prima Facie/Pretext," plaintiff concedes that defendant "has provided an articulated legitimate, nondiscriminatory reason for its actions," but that those reasons were a "pretext for unlawful disability discrimination." (Id. at 17.)

6

that, on or around October 1, 2008, plaintiff walked into the Laguna Postal Store in Elk Grove, California, and saw a woman of Chinese descent, Pla Mooua, working behind the window. (Id. at 16.) Plaintiff alleges that Ms. Mooua is younger than her and was "a new hire." (Id.) This portion of the Second Amended Complaint is difficult to comprehend, but plaintiff appears to allege that: (1) at some point plaintiff was offered a "lobby director" position hundreds of miles away from her home; and (2) notwithstanding that offer, plaintiff should have been offered the position in Elk Grove occupied by Ms. Mooua as a reasonable accommodation for her disabilities. (See id. at 16.)

III.    LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949). The court accepts "all facts alleged as true and construes them in the light most favorable to the plaintiff." County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241

---

[4] In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

n.1 (9th Cir. 2009). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted). The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).

IV.     ANALYSIS

    A.     Plaintiff's Title VII Retaliation Claim

In a section entitled, "RETALIATION, AGE AND SEX," the Second Amended Complaint alleges that defendant retaliated against plaintiff for pursuing a claim or claims with the EEOC. (Second Am. Compl. at 12.)

"Title VII prohibits, among other things, retaliation against an employee for making a charge or otherwise participating in a Title VII proceeding." Nilsson v. City of Mesa, 503 F.3d 947, 953 (9th Cir. 2007) (citing 42 U.S.C. § 2000e-3(a)); see also Davis v. Team Elec. Co., 520 F.3d 1080, 1093 (9th Cir. 2008) ("Employers may not retaliate against employees who have 'opposed any practice made an unlawful employment practice' by Title VII.") (quoting 42 U.S.C. § 2000e-3(a)). "To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

Plaintiff has failed to adequately state a claim for retaliation. As to the first element of a retaliation claim, plaintiff appears to allege that she was retaliated against for filing a claim or claims with the EEOC, which is protected activity. See, e.g., Nilsson, 503 F.3d at 954 n.5. However, it is unclear from the Second Amended Complaint which of plaintiff's claims

8

filed with the EEOC provides the basis for her retaliation claims. Plaintiff alleges that she was retaliated against "based on prior EEOC activity because her complainant [*sic*] is a continuing discriminatory violation of her rights raised in EEOC claim 4F-956-0143-07." (Second Am. Compl. at 12.) Although plaintiff appears to be alleging retaliation as a result of her filing of a claim in EEOC matter 4F-956-0143-07, she expressly stated at the hearing on defendant's motion to dismiss that her claims are *not* based on EEOC claim 4F-956-0143-07. Instead, at the hearing plaintiff stated that her Second Amended Complaint is based on EEOC claim 4F-940-0183-08. Yet, plaintiff's statement at the hearing is at odds with plaintiff's written opposition to defendant's motion, which intimates that defendant retaliated against plaintiff as a result of "Plaintiffs [*sic*] EEOC complaints." (Pl.'s Opp'n to Mot. to Dismiss at 16.) This lack of precision and clarity regarding the basis of plaintiff's retaliation claim warrants, by itself, dismissal of the Second Amended Complaint.

As to the second element of a prima facie retaliation claim, it is unclear from plaintiff's pleading which precise adverse employment action suffered by plaintiff forms the basis of plaintiff's retaliation claim. At most, the Second Amended Complaint appears to allege that defendant retaliated against plaintiff by opposing her claim for unemployment benefits before EDD. (Second Am. Compl. at 11-12.) However, in her amended opposition to defendant's motion to dismiss, plaintiff complains that "[b]ased on Plaintiffs [*sic*] EEOC complaints the USPS has taken retaliatory actions from Plaintiffs [*sic*] redress counseling sessions." (Pl.'s Opp'n to Mot. to Dismiss at 16.) It is simply unclear which alleged adverse employment actions are the subject of plaintiff's retaliation claim.

Regarding the causation element, plaintiff has not sufficiently alleged a causal link between plaintiff's protected activity and any adverse employment action. This problem largely stems from the confusing allegations regarding the protected activity and adverse employment actions at issue here, as discussed above. Critically, it cannot be determined from the allegations in the Second Amended Complaint whether any of defendant's alleged retaliatory actions took

9

place *after* plaintiff engaged in protected activity. Of course, plaintiff could not have been retaliated against for protected activity that had not yet occurred.

The undersigned concludes that plaintiff's Second Amended Complaint does not state a claim of retaliation on which relief can be granted. Accordingly, plaintiff's Second Amended Complaint will be dismissed without prejudice, and plaintiff will be provided with a *final* opportunity to file a sufficient amended complaint.

B.   Plaintiff's Rehabilitation Act Claim

Plaintiff also claims that defendant violated Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.[5] (Second Am. Compl. at 1.) Defendant has moved to dismiss that claim on the grounds that: (1) plaintiff has not pled that she timely exhausted her administrative remedies, and (2) assuming timely exhaustion, plaintiff has not pled a legally sufficient claim under the Rehabilitation Act.

a.   Failure to Plead Timely Contact with EEO Counselor

Defendant first argues that plaintiff's Rehabilitation Act claim should be dismissed because plaintiff failed to allege that she initiated contact with an EEO counselor within 45 days of each allegedly adverse action. (Def.'s Mot. to Dismiss at 12-13.) Defendant cites Bosse v. Napolitano, 337 Fed. Appx. 633, 636 (9th Cir. 2009), which in turn cites 29 C.F.R. § 1614.105(a) and Cherosky v. Henderson, 330 F.3d 1243 (9th Cir. 2003). Although 29 C.F.R. § 1614.105(a) contains the exhaustion requirement described by defendant,[6] defendant has not

---

[5]   The Ninth Circuit Court of Appeals has held that "section 501 is the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap." Boyd v. U.S. Postal Serv., 752 F.2d 410, 413 (9th Cir. 1985); see also Newland v. Dalton, 81 F.3d 904, 906 n.1 (9th Cir. 1996).

[6]   29 C.F.R. § 1614.105(a)(1) provides: "(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter. . . . (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of

offered authority compelling a conclusion that a plaintiff's complaint is subject to dismissal for failure to affirmatively plead timely initiation of contact with an EEO counselor.[7]

Exhaustion is an affirmative defense that a defendant has the burden of raising and proving. See, cf., Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) ("Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies "is an affirmative defense, [so] the defendant bears the burden of pleading and proving it" (citation omitted, modification in original).). Defendant's citation to the Court of Appeals's decisions in Bosse and Cherosky does not compel dismissal of plaintiff's Rehabilitation Act claim at the pleading stage. At a minimum, Bosse and Cherosky are distinguishable because both of those decisions involved motions for summary judgment made on a developed record, not motions to dismiss at the pleading stage. Without more, the undersigned will not, at this point, dismiss plaintiff's Rehabilitation Act claim for failure to affirmatively plead timely contact with an EEO counselor.

                b.      <u>Failure to Sufficiently Plead A Rehabilitation Act Claim</u>

Contrary to the exhaustion argument, defendant persuasively argues that the Second Amended Complaint fails to state a Rehabilitation Act claim under either a disability discrimination or failure to accommodate theory.

"Section 501 of the [Rehabilitation Act] announces a federal government policy to prevent discrimination against the disabled in employment decisions, and expressly encourages

---

personnel action, within 45 days of the effective date of the action."

[7] The Ninth Circuit Court of Appeals has held that although a plaintiff must exhaust his or her administrative remedies prior to pursuing a Rehabilitation Act claim in federal court, failure to exhaust by filing an EEOC claim is not in every instance a complete bar to jurisdiction. See Leong v. Potter, 347 F.3d 1117, 1121-22 (9th Cir. 2003). Instead, "substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite," and "the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." Id. at 1122 (citation omitted).

federal government employers to employ individuals with disabilities." Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003) (per curiam).  "Section 501 provides for two types of claims: (1) non-affirmative action employment discrimination claims based upon 29 U.S.C. § 791(g), and (2) claims based upon the government's failure to reasonably accommodate an employee, as required under 29 U.S.C. § 791(b)." Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1206 (S.D. Cal. 2002).

To state a prima facie claim of disability discrimination under the Rehabilitation Act, "a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007); accord Wilborn, 222 F. Supp. 2d at 1206.  "Section 501 borrows its substantive standards from the Americans with Disabilities Act (ADA)." Lopez, 333 F.3d at 961 (citing 29 U.S.C. § 791(g)); see also Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act ("ADA").").  "According to the ADA, an individual is disabled if that individual (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Coons, 383 F.3d at 884; see also Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1231 (9th Cir. 2003); 42 U.S.C. § 12102(1); accord 29 C.F.R. § 1630.2(g).  "The ADA defines a 'qualified individual' as an individual 'with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" Dark v. Curry County, 451 F.3d 1078, 1086 (9th Cir. 2006) (emphasis omitted) (citing 42 U.S.C. § 12111(8)); accord 29 C.F.R. § 1630.2(m).  If the plaintiff makes a prima facie showing, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision.  The burden then shifts back to the plaintiff to produce evidence sufficient to allow a reasonable factfinder to conclude that plaintiff's

articulated reason is pretextual." Wilborn, 222 F. Supp. 2d at 1207.

In regards to a reasonable accommodation claim, the Rehabilitation Act requires government agencies to reasonably accommodate an employee's disability. See Buckingham v. United States, 998 F.2d 735, 739 (9th Cir. 1993). When a plaintiff alleges a failure to accommodate a disability under the Rehabilitation Act, the burden is on the plaintiff to prove that he or she is a qualified individual with a disability, and that "with or without reasonable accommodation, [he could] perform the essential functions of [his] job." See id. at 739-40 (modification in original). Then, if accommodation of the plaintiff as a qualified individual with a disability is required to enable the plaintiff to perform the essential functions of the job, the plaintiff must provide evidence sufficient to make at least a facial showing that reasonable accommodation is possible. Id. at 740; accord Bateman v. U.S. Postal Serv., 151 F. Supp. 2d 1131, 1143 (N.D. Cal. 2001). If in response to the plaintiff's evidence that reasonable accommodation can be made, the employer presents credible evidence that reasonable accommodation is not possible or practicable, the plaintiff bears the burden of coming forward with evidence that suggests that accommodation may in fact be reasonably made. See Sisson v. Helms, 751 F.2d 991, 993 (9th Cir. 1985).[8]

Plaintiff's Second Amended Complaint does not sufficiently plead the essential

---

[8] Albeit in an unpublished disposition, the Ninth Circuit Court of Appeals has also framed a reasonable accommodation claim as follows:

> Regulations promulgated under § 791 require governmental employers to "make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its program." 29 C.F.R. § 1614.203(c). As we noted in Fuller v. Frank, 916 F.2d 558, 560 (9th Cir. 1990), "[t]his regulation contains essentially three elements: (1) plaintiff must be a "qualified" handicapped individual; (2) the agency must make "reasonable accommodation" to the handicap; and (3) the accommodation need not be made if it would impose an 'undue hardship.'"

Bateman v. U.S. Postal Serv., 32 Fed. Appx. 915, 917 (9th Cir. 2002).

elements required to state a prima facie Rehabilitation Act claim under either a disability discrimination theory or a reasonable accommodation theory. For example, although plaintiff alleges that she suffers from various potentially disabling conditions, it is unclear which conditions form the basis of her Rehabilitation Act claims. Additionally, plaintiff has not alleged that she is otherwise qualified for a position she desires. Moreover, although plaintiff appears to allege that the reasonable accommodation sought was a position entailing a shorter commute, plaintiff has not precisely defined the reasonable accommodation or accommodations sought and refused. Rather than catalogue the remaining pleading deficiencies present in plaintiff's operative pleading, the undersigned will dismiss plaintiff's amended complaint without prejudice and permit plaintiff a final opportunity to plead a legally sufficient Rehabilitation Act claim, whether it be under a disability discrimination theory, a reasonable accommodation theory, or both.

V.     CONCLUSION

For the foregoing reasons, the undersigned HEREBY ORDERS that:

1.    As a result of plaintiff's request at the June 10, 2010 hearing on defendant's motion to dismiss, plaintiff's claims seeking relief pursuant to 42 U.S.C. §§ 1981 and 1983 and the Americans With Disabilities Act, and seeking relief for age discrimination, sex discrimination, and religious discrimination, are dismissed without prejudice.

2.    Defendant's motion to dismiss (Dkt. Nos. 15, 16) plaintiff's second amended complaint is granted as to plaintiff's remaining claims.

3.    Plaintiff's Second Amended Complaint is dismissed without prejudice.

4.    Plaintiff shall have thirty days from the date of entry of this order within which to file, and serve on defendant, an amended complaint entitled "Third Amended Complaint." Plaintiff is informed that the court cannot refer to prior pleadings in order to make an amended complaint complete. An amended complaint must be complete in itself. See Local Rule 220. This is because, as a general rule, an amended complaint supersedes the original

1  complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Accordingly, once plaintiff files
2  an amended complaint, the original no longer serves any function in the case.  Therefore, "a
3  plaintiff waives all causes of action alleged in the original complaint which are not alleged in the
4  amended complaint."  London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981).
5           IT IS SO ORDERED.
6  DATED:  June 11, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE