1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DEIDRA A. LINTZ,

11             Plaintiff,                    No. 2:09-cv-01907 GEB KJN PS

12        v.

13   JOHN E. POTTER, POSTMASTER
     GENERAL, U.S. POSTAL SERVICE,
14
               Defendant.              <u>FINDINGS AND RECOMMENDATIONS</u>
15   _____/

16             Presently before the court is defendant's amended motion for summary judgment

17   (Dkt. No. 72).[1]  The court heard this matter on its February 23, 2012 law and motion calendar.

18   Assistant United States Attorney J. Earlene Gordon appeared on behalf of defendant.  Plaintiff,

19   who is proceeding without an attorney, appeared at the hearing and represented herself.  The

20   undersigned has fully considered the parties' briefs, the parties' oral arguments, and appropriate

21   portions of the record.[2]  For the reasons that follow, the undersigned recommends that

22

23        [1]  This matter proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).
24
          [2]  The court has considered plaintiffs' exhibit (Dkt. No. 76), which plaintiff filed two days
25   before the hearing on defendant's motion for summary judgment.  However, as stated on the record
     at the hearing, this exhibit does not materially impact the court's decision on the administrative
26   exhaustion issue to which the exhibit is apparently directed and which the undersigned resolves in

1

1  defendant's amended motion for summary judgment be granted, judgment be entered in

2  defendant's favor, and this case be closed.

3  I.      GENERAL BACKGROUND[3]

4          Plaintiff is a former employee of the U.S. Postal Service ("USPS").  (Def.'s

5  Statement of Undisputed Material Facts ("SUMF") ¶ 1.)  She started her career in 1987 as a letter

6  carrier in the Mountain View, California Post Office, and it is undisputed that plaintiff's

7  permanent duty station was at all times Mountain View, regardless of the location of her physical

8  workplace.[4]  (Id. ¶¶ 3, 7.)  In 1992 and 1994, plaintiff sustained on-the-job injuries to her back

9  that precluded her from continuing to perform the job duties of a letter carrier.  (Id. ¶ 4.)  From

10 1996 through the remainder of her Postal Service career, USPS placed plaintiff in jobs which it

11 contends were designed to accommodate plaintiff's medical restrictions.[5]  (Id. ¶ 5.)

12         In 2000, plaintiff was placed in the position of Postal Vision Coordinator.  (Def.'s

13 SUMF ¶ 8.)  Defendant describes plaintiff's Postal Vision Coordinator position as an ad hoc,

14 "make work" position designed to accommodate plaintiff's injuries, and that plaintiff's duties

15 _____

16 plaintiff's favor.

17    [3]  The facts contained in this general background section are undisputed unless otherwise
18 noted.  This motion has been complicated by the fact that plaintiff filed two statements of disputed
   facts for no apparent reason.  Additionally, at the hearing, plaintiff attempted to argue an entirely
19 new set of facts that contradict the parties' briefs and supporting materials; plaintiff acknowledged
   that she chose not to file numerous documents that she relied on at the hearing.  The undersigned has
20 disregarded plaintiff's factual representations at the hearing to the extent not supported by the paper
   record.

21    [4]  Plaintiff contends that although Mountain View was her "pay station," her "work station"
22 was the San Francisco Processing and Distribution Center.  (Pl.'s Statement of Disputed Facts, Fact.
   No. 7 (citing Lintz Decl. ¶ 9).)  This factual difference is not material to the resolution of the pending
23 motion.

24    [5]  It is undisputed that "Plaintiff's medical restrictions included a 5-lb. lifting restriction for
   two hours per day; nor more than 15 minutes per hour walking; no greater than 30 minutes of fine
25 manipulation in a 4-hour period; no climbing, reaching above her shoulder or operating machinery;
   2 hours simple grasping; no greater than 20 minutes/2 hours per day sitting, standing, bending,
26 stooping; no more than 20 minutes/one hour per day pushing, pulling; no greater than 90
   minutes/three hours per day driving; and one hour per day kneeling."  (Def.'s SUMF ¶ 6.)

consisted of preparing slides of information for posting on monitors at the San Francisco facilities.  (Id. ¶¶ 9-11.)  Although plaintiff disputes defendant's disparaging characterization of plaintiff's position, she does not dispute the duties attendant to that job.  When plaintiff began working as a Postal Vision Coordinator, she was physically located in San Francisco.  (Id. ¶ 14.)

In 2005, plaintiff moved her personal residence from the San Francisco Bay Area to Elk Grove, California.  (Def.'s SUMF ¶ 15.)  After plaintiff moved to the Sacramento area, Horace Hinshaw, a "corporate relations specialist," arranged to have plaintiff use temporary, available space in Sacramento, and permitted plaintiff to divide her time between offices in Sacramento and San Francisco.  (Id. ¶¶ 13, 17.)  Don Smeraldi, plaintiff's supervisor, had advised plaintiff—plaintiff uses the term "harassed"—to attempt to officially transfer her permanent carrier job to Sacramento or some nearby post office before actually moving her home.  (Id. ¶ 16: Lintz Decl. ¶ 3.)  Plaintiff did not do so because she was concerned she would lose the seniority that she had accrued as a postal carrier in the San Francisco District.  (Def.'s SUMF ¶ 16.)

As explained in greater detail below, USPS eliminated plaintiff's job as Postal Vision Coordinator in 2007.  (Def.'s SUMF ¶ 19.)  The parties contest the timing of, and reasons for, the decision.  However, the undisputed evidence supports that the decision was made as early as May 2007, with an official elimination date of July 2007, and that plaintiff was advised of that decision as early as May 2, 2007.  (See Def.'s Ex. 2 (Response to Pl.'s Interrogs., Set One, Nos. 5, 14); compare Def.'s SUMF ¶ 41, with Pl.'s Statement of Disputed Facts In Opp'n to Def.'s Mot. for Summ. J. ("SDF"), Fact No. 41.)

In light of the elimination of the Postal Vision Coordinator, USPS offered plaintiff the position of "Lobby Director" at the Mountain View office, a job which USPS contends was specifically tailored to meet plaintiff's medical restrictions, as provided by plaintiff's physician. (Def.'s SUMF ¶ 44.)  Plaintiff contends that the Lobby Director position did not meet her medical restrictions.  (Pl.'s SDF, Fact No. 44.)  Plaintiff accepted the Lobby Director position,

1    allegedly "under protest," and reported to work on June 22, 2007.  (Def.'s SUMF ¶ 46;[6] Pl.'s

2    SDF, Fact No. 46.)  Also on June 22, 2007, plaintiff allegedly suffered another on-the-job injury,

3    and was forced to leave work.  (Def.'s SUMF ¶ 47.)  Plaintiff never returned to work after June

4    22, 2007.  (Id. ¶ 48.)  Plaintiff was ultimately terminated from her employment in November

5    2008 for missing one continuous year of work due to a disability or injury.  (See id. ¶¶ 55, 57-58,

6    60, 63; see also Lintz. Decl., Ex. 4.)

7            As discussed in more detail below, plaintiff claims to have sought reasonable

8    accommodations for her disability between 2007 and 2008, which were allegedly not granted.

9    Plaintiff also filed two Equal Employment Opportunity ("EEO") complaints, with Agency Case

10   numbers of 4F-956-0143-07 and 4F-940-0183-08.  Following resolution of those administrative

11   cases, plaintiff filed a complaint in this court.

12           Plaintiff's Third Amended Complaint (Dkt. No. 22) is the operative complaint and

13   alleges four claims for relief: (1) employment discrimination based on disability in violation of

14   the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791; (2) retaliation in

15   violation of the Rehabilitation Act; (3) employment discrimination based on race in violation of

16   Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16; and (4) retaliation

17   in violation of Title VII.

18   II.    LEGAL STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

19           Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

20   summary judgment, identifying each claim or defense–or the part of each claim or defense–on

21   which summary judgment is sought."  It further provides that "[t]he court shall grant summary

22   judgment if the movant shows that there is no genuine dispute as to any material fact and the

23   ////

24   ////

25   

26       [6] Several of defendant's facts presented in its statement of undisputed material facts appear
     to incorrectly use the year "2011," when the correct year is 2007.  (See Def.'s SUMF ¶¶ 46-48.)

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7]  A shifting burden of proof governs motions for summary judgment under Rule 56.  <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d at 387 (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must establish that a genuine dispute as to any material fact actually exists.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986).  To overcome summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.</u>, 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'"  <u>FreecycleSunnyvale v. Freecycle Network</u>, 626 F.3d 509, 514 (9th Cir. 2010) (quoting <u>Anderson</u>, 477 U.S. at 248).  A

---

[7]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

party opposing summary judgment must support the assertion that a genuine dispute of material

fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact."[8]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

In resolving a motion for summary judgment, the evidence of the opposing party

is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

be drawn from the facts placed before the court must be viewed in a light most favorable to the

opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Contra Costa Transit Auth.,

653 F.3d 963, 966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the

opposing party "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587

(citation omitted).

III.    DISCUSSION

Broadly stated, defendant moves for summary judgment on two different grounds.

First, defendant moves for summary judgment on the basis of the affirmative defenses that

plaintiff failed to administratively exhaust certain claims and failed to timely file suit in this

court.  Second, defendant challenges plaintiff's claims on the merits.  The undersigned addresses

these two grounds in turn.

---

[8] "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

1     A.    <u>Exhaustion of Administrative Remedies and Timeliness of Suit</u>

2          Defendant moves for summary judgment as to several aspects of plaintiff's Third

3 Amended Complaint on the grounds that plaintiff failed to exhaust her administrative remedies

4 and failed to timely file her lawsuit in this court.  (<u>See</u> Def.'s Memo. of P. & A. In Supp. of Mot.

5 for Summ. J. ("Def.'s Memo.") at 4-6, Dkt. No. 72, Doc. No. 72-1.)  First, defendant contends

6 that plaintiff failed to file her lawsuit within 90 days of receiving the Final Agency Decision in

7 Agency Case No. 4F-940-0183-08, and that, accordingly, plaintiff's claims raised in that

8 administrative case are time-barred.  Second, defendant argues that plaintiff completely failed to

9 exhaust her claim for race discrimination during the administrative process, and, accordingly,

10 that claim is not properly before this court.  As part of the second argument, defendant also

11 contends that plaintiff failed to exhaust several other "claims" during the administrative process;

12 defendant understandably derives these claims from passing allegations in the Third Amended

13 Complaint.  The undersigned addresses defendant's arguments in reverse order.

14     1.    <u>Exhaustion of Race Discrimination Claim and Other Allegations in Third
Amended Complaint</u>

15

16          Defendant argues that plaintiff failed to administratively exhaust her race

17 discrimination claim and, therefore, that claim is not properly before this court.  Moreover,

18 defendant contends that certain other allegations in plaintiff's Third Amended Complaint,

19 characterized as "claims" by defendant, remain unexhausted and are thus not properly before the

20 court.  Specifically, defendant contends:

21          No claim for race discrimination was exhausted in either EEO filing, and
thus Plaintiff's race discrimination claims are barred as well.

22          Additionally, Plaintiff's claims with regard to COP payments, USPS's
refutation of her unemployment claim, the USPS's alleged refusal to

23          engage in FMLA, the investigation by the Office of the Inspector General
into allegations that Plaintiff was guilty of time sheet fraud, the rescinding

24          of her medical authorization, and USPS's reclassification of her leave as
"leave without pay" have not been exhausted, and the Court is without

25          jurisdiction to hear them.  [UMF 156-163]

26 (<u>See</u> Def.'s Memo. at 4.)  Plaintiff's opposition brief addresses the question of exhaustion of

1  plaintiff's race discrimination claim, but does not address the remaining allegations raised by

2  defendant.  The undersigned separately addresses exhaustion of plaintiff's race discrimination

3  claim and the remaining allegations.

4        Coverage of Title VII of the Civil Rights Act of 1964 is extended to reach federal

5  employees through 42 U.S.C. § 2000e-16, such that "all personnel actions affecting federal

6  employees and applicants for federal employment shall be made free from any discrimination

7  based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S.

8  820, 829-30 (1976) (citation and quotation marks omitted).  However, an aggrieved federal

9  employee must seek relief from the agency that allegedly discriminated against him or her as a

10  "precondition" to filing an action in federal district court.  Id. at 832.

11        A plaintiff must achieve "substantial compliance" with this exhaustion

12  requirement to provide a district court with jurisdiction over his or her claims.  Leong v. Potter,

13  347 F.3d 1117, 1122 (9th Cir. 2003).  Generally, "[t]he jurisdictional scope of the plaintiff's

14  court action depends on the scope of the EEOC charge and investigation," and "[t]he specific

15  claims made in district court ordinarily must be presented to the EEOC."  Id.  "[T]he district

16  court has jurisdiction over any charges of discrimination that are 'like or reasonably related to'

17  the allegations made before the EEOC, as well as charges that are within the scope of an EEOC

18  investigation that reasonably could be expected to grow out of the allegations."  Id. (citation

19  omitted); see also B.K.B. v. Maui Police Dep't., 276 F.3d 1091, 1100 (9th Cir. 2002)

20  ("Allegations of discrimination not included in the plaintiff's administrative charge may not be

21  considered by a federal court unless the new claims are like or reasonably related to the

22  allegations contained in the EEOC charge.") (citations and quotation marks omitted).  The court

23  must construe an EEOC charge with "the utmost liberality," e.g., B.K.B., 276 F.3d at 1100, but

24  "there is a limit to such judicial tolerance when principles of notice and fair play are involved,"

25  Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).  "Whether a plaintiff

26  in a Title VII action has timely exhausted her administrative remedies is an affirmative defense,

1   [so] the defendant bears the burden of pleading and proving it." Kraus v. Presidio Trust

2   Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) (citation and

3   quotation marks omitted).

4            Here, the undersigned need not resolve whether plaintiff exhausted separate

5   claims premised on the allegations concerning "COP payments," USPS's refutation of plaintiff's

6   unemployment claims, etc., identified in the latter portion of the block-quoted text above. (See

7   Def.'s Memo. at 4.) Plaintiff's failure to address these allegations in her written opposition had

8   caused some initial confusion in regards to whether these allegations actually constitute separate

9   claims. However, plaintiff clarified at the hearing that those allegations are merely examples of

10  defendant's "adverse actions" against plaintiff stemming from underlying discrimination or

11  mistreatment, but are not actually separate claims that are pending before this court.

12  Accordingly, defendant's exhaustion-related arguments as to those allegations are moot.

13           Not mooted, however, is defendant's argument that plaintiff did not exhaust her

14  race discrimination claim. Defendant contends that plaintiff did not include a claim of race

15  discrimination in her EEO claims pertaining to the Agency Cases numbered 4F-956-0143-07 and

16  4F-940-0183-08. (See Def.'s Memo. at 4-5.) However, defendant does not cite to or discuss,

17  and has not included in the record, plaintiff's administrative complaints or subsequent filings

18  supporting plaintiff's charges. Without plaintiff's actual complaints or claims, the undersigned

19  cannot conclude that defendant is entitled to judgment as a matter of law on the question of

20  exhaustion. Because exhaustion is an affirmative defense for which defendant has the ultimate

21  burden to prove at trial, it is insufficient for defendant to generally point to plaintiff's inability to

22  produce evidence of exhaustion. See, e.g., Houghton v. South, 965 F.2d 1532, 1536 (9th Cir.

23  1992) ("Where, as here, the moving party bears the burden of proof at trial, it must come forward

24  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

25  trial.") (citation and quotation marks omitted); see also Kraus, 572 F.3d at 1046 n.7 (describing a

26  challenge premised on administrative exhaustion as an affirmative defense); Tovar v. U.S. Postal

                                              9

1  Serv., 3 F.3d 1271, 1284 (9th Cir. 1993) ("In every civil case, the defendant bears the burden of

2  proof as to each element of an affirmative defense.") (Thompson, J., concurring in part and

3  dissenting in part).  Defendant has not shown an absence of a genuine dispute of material fact as

4  to the affirmative defense of exhaustion and, accordingly, has not met his initial burden in

5  connection with a motion for summary judgment.

6          Instead of relying on the administrative complaints actually filed or lodged by

7  plaintiff, defendant only cites to the EEOC's Final Decision in Agency Case No. 4F-956-0143-07

8  and the Final Agency Decision in Agency Case No. 4F-940-0183-08.  Defendant appears to

9  contend, without any legal support, that the text of the final decision of an agency or the EEOC

10  conclusively provides the scope of a plaintiff's administrative charge.  See, e.g., B.K.B., 276 F.3d

11  at 1099 ("The EEOC's failure to address a claim asserted by the plaintiff in her charge has no

12  bearing on whether the plaintiff has exhausted her administrative remedies with regard to that

13  claim.").  Although it is true that neither administrative decision relied on by defendant

14  affirmatively refers to or resolves a claim of race discrimination, the Final Agency Decision in

15  Agency Case No. 4F-940-0183-08 leaves open the question of whether plaintiff attempted to

16  raise a race discrimination claim in the administrative proceedings.  In summarizing the claims

17  presented, the Final Agency Decision states, in relevant part:

18          The complaint alleged discrimination based on Religion (Jehovah [*sic*]
            Witness), Sex (Female), Age . . . , Retaliation (Prior and Current EEO
19          Activity), physical disability (Cervical Disc Disease/Lumbar Herniation)
            and Mental Disability (Depression) . . . ."
20
            Initially, the complaint included two (2) additional allegations.  However,
21          on December 10, 2008, these allegations were dismissed for failure to state
            a claim and as an identical matter.  A review of the record established that
22          this (these) allegations were properly dismissed . . . .  Consequently, the
            December 10, 2008 decision explaining the rationale for the dismissal is
23          herein endorsed and incorporated by reference for the purpose of this final
            agency decision.
24

25  (Def.'s Ex. 11, Sub-Ex. A at 1.)  Nothing in this Final Agency Decision assures the court that the

26  recitation of claims therein reflects all of the claims raised by plaintiff.  Moreover, defendant has

1    not provided the court with a copy of the December 10, 2008 agency decision addressing the two

2    allegations that were dismissed earlier in the administrative proceedings.

3              Adding to the uncertainty regarding defendant's argument about administrative

4    exhaustion are two pieces of evidence relied on by plaintiff that suggest a real possibility that

5    plaintiff raised a race discrimination claim at the administrative level.  (Pl.'s Opp'n at 5, Dkt.

6    No. 73.)  First, plaintiff cites her Exhibit 19 as substantiating her race discrimination claim.

7    Plaintiff contends that Exhibit 19 is her "October 5, 2007 EEO complaint," although nothing on

8    the face of that exhibit assures the court that this document is indeed plaintiff's formal

9    administrative complaint.[9]  (Lintz Decl. ¶ 34 & Ex. 19.)  Assuming that Exhibit 19 is plaintiff's

10   complaint, defendant correctly argues that this document does not explicitly mention a race-

11   related claim or race discrimination claim.  However, this document does complain about the

12   filling of a certain position at USPS with another permanent employee, but that plaintiff was not

13   advised of the job opening.  It also seeks the job description and notification announcement for

14   the position currently filled by James Wigdel.  In connection with her race discrimination claim,

15   plaintiff argues that James Wigdel was a similarly situated, Caucasian employee who was hired

16   in plaintiff's work unit after plaintiff's Postal Vision Coordinator position was eliminated.  (Pl.'s

17   Opp'n at 10-11.)  Defendant also addresses the hiring of Wigdel in addressing the merits of

18   plaintiff's claim of race discrimination in the alternative, which readily suggests that plaintiff's

19   claim of race discrimination is focused in large part on Wigdel.  (See Def.'s Memo. at 8-9; Def.'s

20   Reply Br. at 7, Dkt. No. 74.)  Exhibit 19 raises the possibility that the agency was on notice

21   during the administrative proceedings that plaintiff had asserted a race discrimination claim.

22             Second, plaintiff's Exhibit 22, which is a form entitled "Information for Pre-

23   Complaint Counseling," plainly refers to "race" and "disparate treatment."  Although the

24   _____

25        [9]   Plaintiff's statement of disputed facts represents that "Plaintiff amended her EEO
     complaint number 4F-940-0183-08 on October 7, 2008 to add a race discrimination claim."  (Pl.'s
     SDF at 18 (citing Pl.'s Ex. 22).)  Plaintiff's Exhibit 22 is a form entitled "Information for Pre-
26   Complaint Counseling."

1   information provided by plaintiff is far from detailed, that form again raises the possibility that

2   race was at issue at some point during the administrative proceedings.  Defendant counters this

3   evidence by arguing that there is no case number listed on the Information for Pre-Complaint

4   Counseling form.  (Def.'s Reply Br. at 5-6.)  However, it is not possible to conclude as a matter

5   of law that this form did not raise allegations that are reasonably related to allegations that were

6   the subject of the EEO investigation.

7           Taking all of these documents together, and construing the evidence in a light

8   most favorable to plaintiff, defendant is not entitled to summary judgment on the grounds of

9   failure to exhaust administrative remedies.  To be clear, however, even without plaintiff's rather

10  vague evidence, defendant is not entitled to judgment as a matter of law.  Simply put, defendant

11  has the burden of proving plaintiff's failure to exhaust, but failed to prove that plaintiff failed to

12  exhaust her race discrimination claim in a manner sufficient to warrant summary judgment.

13          2.      Timeliness of Filing Suit Relative to Agency Case No. 4F-940-0183-08

14          Defendant further contends that plaintiff failed to timely file her complaint in this

15  court following receipt of the Final Agency Decision in Agency Case No. 4F-940-0183-08,

16  which addressed plaintiff's charges of disability discrimination and retaliation premised on the

17  termination of plaintiff's employment and Federal Employee Health Benefits.  (See Def.'s

18  Memo. at 4; see also id. at 5-6.)  Thus, defendant contends that such claims are time-barred.  In

19  short, defendant argues that the Final Agency Decision was issued on April 8, 2009, and that as a

20  result plaintiff had to file her civil action in this court by July 10, 2009, but that plaintiff failed to

21  file civil action until July 13, 2009.  Neither party has produced evidence of the actual date

22  that plaintiff received the Final Agency Decision, and defendant relies exclusively on applicable

23  presumptions pertaining to the receipt of an agency decision.

24          Relevant here, a plaintiff generally has 90 days from the receipt of a right-to-sue

25  notice letter from the EEOC, or relevant agency decision, to file a civil action.  See, e.g., Steifel

26  v. Bechtel Corp., 624 F.3d 1240, 1245 (9th Cir. 2010).  The "ninety-day period operates as a

1  limitations period," and "the start of the limitations period [is measured] from the date on which

2  a right-to-sue notice letter arrived at the claimant's address of record." Payan v. Aramark Mgmt.

3  Servs. Ltd. P'ship, 495 F.3d 1119, 1121-22 (9th Cir. 2007).[10] "Where the date of actual receipt is

4  unknown, [the court] will estimate that date based on the date of EEOC disposition and issuance

5  of notice, with some compensation for mailing time."[11] Id. at 1122.  The Ninth Circuit Court of

6  Appeals has held that certain rebuttable presumptions govern the calculation of the date of

7  receipt where the actual date of receipt is not known.  First, courts in this Circuit presume "that

8  the letter issuance date is also the date on which the letter was mailed." Id. at 1123.  Next, courts

9  in this Circuit presume that, consistent with the timing prescriptions in then-numbered Federal

10  Rule of Civil Procedure 6(e)[12] and suggestive Supreme Court authority, a plaintiff received the

11  right-to-sue notice within three days of mailing.  Id. at 1125-26.  A plaintiff may rebut this

12  presumption by producing "evidence suggesting that receipt was delayed beyond the presumed

13  period." Id. at 1126.

14          Here, defendant does not argue that either the actual date of mailing of the right-

15  to-sue notice letter or the date that plaintiff actually received that letter is known.  Instead,

16  defendant relies solely on the rebuttable presumptions described above.  Like defendant, plaintiff

17  has not produced evidence supporting the proposition that the actual date of mailing of the right-

18  to-sue notice letter or the date that plaintiff actually received that letter are known.

19          In regards to the date of mailing, the notice of the "Right To File A Civil Action"

20  is contained in the Final Agency Decision, which is dated April 8, 2009.  (Def.'s Ex. 11, Sub-Ex.

21

22          [10]  "[B]ecause the statute of limitations is an affirmative defense, the defendant bears the
   burden of proving that the plaintiff filed beyond the limitations period." Payan, 495 F.3d at 1122.
23

24          [11]  Where the date of arrival is known, the court "will deem the claimant to have received
   notice on that date, regardless of whether the claimant personally saw the right-to-sue letter." Payan,
25  495 F.3d at 1122.

26          [12]  Former Federal Rule of Civil Procedure 6(e) is now numbered as Federal Rule of Civil
   Procedure 6(d).

1   A at 17.)  Accordingly, the date of mailing is presumed to be Wednesday, April 8, 2009, and

2   plaintiff does not dispute this date of mailing.

3            In terms of the date of receipt, defendant does not assert what he believes the date

4   of receipt is presumed to be.  Instead, he simply contends that, applying the three-day rule

5   announced in Payan, plaintiff's 90-day deadline to file a civil action was July 10, 2009.

6   Defendant then argues that because plaintiff did not file her lawsuit in this court until July 13,

7   2009, all of plaintiff's claims asserted in Agency Case No. 4F-940-0183-08 are time-barred.

8            Before addressing whether plaintiff has rebutted the presumed date of receipt, the

9   undersigned briefly addresses whether defendant's calculation of the relevant dates is proper.  As

10  note above, the presumed date of mailing is undisputed to be Wednesday, April 8, 2009.  Adding

11  three days for mailing, plaintiff is presumed to have received the right-to-sue letter on April 11,

12  2009, which was a Saturday.  Counting 90 days from April 11, 2009, leads to a filing deadline of

13  Friday, July 10, 2009.  Accordingly, as defendant argues, plaintiff is presumed to have been

14  required to file her civil action in federal court no later than July 10, 2009.  Plaintiff did not file

15  her complaint until Monday, July 13, 2009.  Thus, unless plaintiff adequately rebuts the

16  presumed filing deadline, her claims asserted in Agency Case No. 4F-940-0183-08 are time-

17  barred.

18           Plaintiff contends that she "believes that she received notice of her right to file a

19  federal action on around[13] April 14, 2009, not April 10, 2009 as defendant assumes,[14] because

20  she wrote on the envelope when she received it that July 13, 2009 was when the 90 days was

21  [sic] 'over.'"  (Pl.'s Opp'n at 5.)  Plaintiff attempts to rebut the presumed date of receipt with her

22

23           [13]  Although plaintiff's opposition is typewritten, the term "around" appears as a handwritten
    inter-lineation.  Plaintiff's opposition brief and supporting materials are replete with these
24  handwritten corrections or amendments.

25           [14]  It appears that plaintiff's opposition brief originally read: "assumes without any supporting
    evidence."  However, plaintiff crossed out the phrase "without any supporting evidence" by hand
26  with a pen or pencil prior to filing the brief.

                                                    14

1    declaration and one piece of evidence.  If plaintiff actually received the right-to-sue notice letter

2    on April 14, 2009, her deadline to file a civil action in this court would have been July 13, 2009.

3    Again, plaintiff filed her lawsuit on July 13, 2009.

4                         In relevant part, plaintiff's declaration states:

5               I received the Final Agency Decision which informed me that I had 90
               days to file a lawsuit on or around April 14, 2009.  I remembered that date
6               because it was the day before April 15, which is the anniversary of my
               father's death and also is when taxes is [*sic*] due.  I saw that I had 90 days
7               to file a lawsuit and I wrote on the envelope that 90 days was over [*sic*] on
               July 13, 2009.
8

9    (Lintz Decl. ¶ 13.)  Appended to plaintiff's declaration as Exhibit 20 is a copy of a U.S. Postal

10   Service Priority Mail Envelope.  (Id., Ex. 20.)  The envelope is addressed to plaintiff and is from:

11              U.S. POSTAL SERVICE
               NATIONAL EEO INVESTIGATIVE SERVICES
12              PO BOX 21979
               TAMPA, FL 33622-1979
13

14   (Id.)  The copy does not indicate an official date of mailing or a date of receipt.[15]  However, the

15   following handwritten notation appears on the envelope:

16              Federal Court
               90 days
17              over
               by 7/13/09
18

19   (Id.)  In regards to the envelope, plaintiff's declaration further states: "Attached is [*sic*]

20   Exhibit 21[16] is a true and correct copy of the envelope in which I received the notice that I had

21   90 days to file a lawsuit.  On the envelope I wrote a note to remind myself that I had until

22

23        [15]  Interestingly, a "Delivery Confirmation" sticker and bar code appears to be affixed to the
     envelope, with an apparent tracking number of "0308 1400 0000 9381 5477." (Lintz Decl., Ex. 20.)
24   At the hearing, defendant's counsel represented that although she did not specifically ask her client
     to check this bar code, her client was unable to identify an actual date of delivery.

25        [16]  Although plaintiff's declaration represents that a copy of the envelope is attached as
     Exhibit 21, plaintiff actually attached that copy as Exhibit 20.  Plaintiff's declaration regarding the
26   numbered exhibits and the actual numbered exhibits do not, for the most part, match.

                                                    15

July 13, 2009 to file the lawsuit, 90 days on or around April 14, 2009, was the time I received the notice." (Id. ¶ 36.)  Plaintiff's declaration is signed under penalty of perjury, stating: "I state under penalty of perjury under the laws of the United States of America that the above statements are true and correct to the best of my knowledge and memory." (Id. at 7-8.)

Defendant's sole argument in response to plaintiff's declaration and evidence is that plaintiff's representations with respect to receiving the right-to-sue notice letter on or around April 14, 2009, are "contrary to [plaintiff's] deposition testimony" and were created and filed simply to avoid summary judgment.[17] (Def.'s Reply Br. at 4-5.)  Defendant's argument, premised on the so-called "sham affidavit rule," does not bar consideration of plaintiff's declaration and evidence.

In the Ninth Circuit, the sham affidavit rule generally provides that "'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'"  Van Asdale v. Int'l Gam Tech., 577 F.3d 989, 998 (9th Cir. 2009) (citing Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)).  The Ninth Circuit Court of Appeals has observed that "'if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'"  Id. (quoting Kennedy, 952 F.2d at 266)  It has warned, however, that the sham affidavit rule should be applied "with caution" because: (1) the "rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence"; and (2) "[a]ggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys."  Id.  The Court of Appeals has placed two

---

[17]  Defendant also notes parenthetically that the envelope submitted as plaintiff's Exhibit 20 was "(not previously produced to Defendant)." (Def.'s Reply Br. at 5.)  However, defendant has not objected to that evidence or otherwise filed evidentiary objections to plaintiff's declaration or evidence.

1   limitations on the sham affidavit rule:

2             [W]e have fashioned two important limitations on a district court's
          discretion to invoke the sham affidavit rule.  First, we have made clear that
3         the rule does not automatically dispose of every case in which a
          contradictory affidavit is introduced to explain portions of earlier
4         deposition testimony; rather, the district court must make a factual
          determination that the contradiction was actually a "sham."  Second, our
5         cases have emphasized that the inconsistency between a party's deposition
          testimony and subsequent affidavit must be clear and unambiguous to
6         justify striking the affidavit.  Thus, the non-moving party is not precluded
          from elaborating upon, explaining or clarifying prior testimony elicited by
7         opposing counsel on deposition [and] minor inconsistencies that result
          from an honest discrepancy, a mistake, or newly discovered evidence
8         afford no basis for excluding an opposition affidavit.

9   Id. at 998-99 (citations and quotation marks omitted).

10            Here, defendant argues that plaintiff's prior deposition testimony contradicts

11  plaintiff's declaration regarding the date of receipt, noting that plaintiff "unequivocally stated

12  that she did not know when she received" the right-to-sue notice letter despite being given

13  information to refresh her recollection.  (Def.'s Reply Br. at 4-5.)  Specifically, defendant relies

14  on the following testimony:

15        Q.      . . . Did you ever receive a final decision from the Postal Service or
                  from the EEO people with regard to your complaint of
16                discrimination?

17        A.      Yes.

18        Q.      And would you – do you recall when you received that?

19        A.      I can't remember.

20        Q.      If I told you that it was issued sometime in April of 2009, does that
                  sound right?
21
          A.      I can't remember.
22
          . . .
23
          Q.      This is what I've been provided as the final decision on your
24                complaint of discrimination.  Would you take a minute to take a
                  look at this and tell me if this looks familiar to you, if this is
25                something you've seen before?  And take as long as you want, I
                  know it's kind of long.
26

                                    17

| | | |
|---|---|---|
| 1 | A. | It looks familiar. |
| 2 | Q. | Is this what you think you received from the Postal Service with regard to their final decision? |
| 3 4 | A. | I think so.  I can't really compare to what I don't really have.  So I don't know. |
| 5 | Q. | On the back of this, you'll see it's signed by, is that Kelly Lewis?  I'm trying to read upside down. |
| 6 | A. | Um-hmm. |
| 7 | Q. | And there's a date April 8, 2009.  Do you see that? |
| 8 | A. | Yes. |
| 9 10 | Q. | Does this refresh your recollection at all with regard to when a final agency decision was made on your complaint of discrimination? |
| 11 12 | A. | Can you repeat that question? |
| 13 | Q. | Sure.  I just wondered if seeing this refreshed your memory at all with regard to when you would have received this decision from the Postal Service? |
| 14 15 | A. | No. |

(Id. (citing Lintz Dep. at 123:23–125:20, attached as Ex. 15 to Def.'s Reply Br.) (modifications in original).)

The undersigned cannot make a finding that plaintiff's later-filed declaration was a sham.  Simply put, plaintiff's deposition testimony and declaration are not actually inconsistent.  Plaintiff's deposition testimony reveals that plaintiff could not remember when she received the Final Agency Decision, and her declaration provides an approximate date.  If anything, the declaration clarifies the deposition testimony.  Moreover, plaintiff's declaration attempts to explain her poor memory during the deposition and her ability to recall more details later.  Plaintiff declares under penalty of perjury that:

> During my deposition, I was not able to recall many exact dates and details
> that I was asked about, some of which happened many years earlier.
> However, after the deposition, when I was not under pressure and I was

> able to refresh my memory in various ways, I was able to remember many dates and details that I could not recall at my deposition.  I made many corrections to my deposition transcript in which I supplied the details I could not [*sic*] are attached as Exhibit 20.[18]

(Lintz Decl. ¶ 14.)  Although doubtlessly frustrating for defendant, there simply is no explicit contradiction between plaintiff's deposition testimony and later-filed declaration.  It might be that defendant could use plaintiff's subsequent clarification of details to impeach plaintiff's credibility in front of a jury if this case reaches trial, but the court cannot make the required factual finding that the there exists a "clear and unambiguous" inconsistency between plaintiff's deposition testimony and subsequent declaration.  Accordingly, application of the sham affidavit rule is not warranted, and the court does not strike paragraph 13 of plaintiff's declaration or the attached Exhibit 20.

Because the sham affidavit rule does not negate plaintiff's affidavit, a genuine dispute of material fact exists regarding whether plaintiff timely filed her lawsuit in relation to Agency Case No. 4F-940-0183-08.  The undersigned notes that this is a relatively close call in that the Ninth Circuit Court of Appeals looks unfavorably on generalized claims of delayed mail.  See Payan, 495 F.3d at 1126 (stating that "general claims that mail is sometimes delayed will not be sufficient to rebut the presumption.").  However, plaintiff has offered enough evidence, including a crucial declaration sworn under penalty of perjury and a copy of the mailing envelope suggesting a later date of actual receipt, to rebut the presumption relied on by defendant.  That evidence, combined with the fact that defendant bears the ultimate burden to prove his affirmative defenses, leads to the conclusion that defendant is not entitled to summary judgment on the basis of plaintiff's allegedly untimely lawsuit.

////

---

[18]  Plaintiff's Exhibit 20 does not appear to reflect the purported corrections to plaintiff's deposition transcript.  Plaintiff appears to have filed those corrections as Exhibit 29.  Exhibit 29 does not include any corrections to the deposition pages 123 through 125.

B.      The Merits of Plaintiff's Claims

        1.      Plaintiff's Race Discrimination Claim

Defendant contends that even assuming that plaintiff's race discrimination claim was properly exhausted, plaintiff cannot establish a prima facie claim of discrimination on account of race, or otherwise withstand the motion for summary judgment.  The undersigned concludes that no genuine dispute of material fact precludes entry of judgment in defendant's favor in regards to plaintiff's race discrimination claim.

As noted above, "all personnel actions affecting federal employees or applicants for federal employment . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  "The *prima facie* case may be based either on a presumption arising from the factors such as those set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 . . . (1973), or by more direct evidence of discriminatory intent."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).[19]  To state a prima facie discrimination claim under the McDonnell Douglas burden-shifting framework applicable to such discrimination claims, a plaintiff must show that "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] position; (3) [she] experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  Fonseca v. Sysco Food Servs. of Ariz., 374 F.3d 840, 847 (9th Cir. 2004) (citation and quotation marks omitted).[20]  If the plaintiff establishes a

---

[19]  In regards to her race discrimination claim, plaintiff only attempts to demonstrate a prima facie claim under the McDonnell Douglas burden-shifting framework.  (See Pl.'s Opp'n at 10.)

[20]    To state a prima facie "failure-to-promote" claim under the McDonnell Douglas framework, "a plaintiff must show that (1) she belongs to a protected class; (2) she applied for and was qualified for the position she was denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff."  Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

1    prima facie case, it creates a rebuttable presumption that the employer unlawfully discriminated

2    against the plaintiff, and the "burden of production then shifts to the employer to articulate a

3    legitimate, nondiscriminatory reason for its action." Dominguez-Curry, 424 F.3d at 1037.  If the

4    employer meets this burden, the "plaintiff then must produce sufficient evidence to raise a

5    genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is

6    merely a pretext for discrimination."  Id.  Under the McDonnell Douglas framework, "[t]he

7    burden of persuasion, as opposed to production, however, remains with the plaintiff at all times."

8    Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004).

9            In regards to plaintiff's prima facie claim of race discrimination, the parties do not

10   dispute that plaintiff is African American.  (Lintz Decl. ¶ 1.)  Accordingly, plaintiff belongs to a

11   protected class.  See Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659 (9th Cir.

12   2002) ("It is well-established that Title VII applies to any racial group, whether minority or

13   majority.").

14           The parties also do not appear to dispute that plaintiff was qualified for and

15   adequately performing her job as a Postal Vision Coordinator/Editor prior to the alleged disparate

16   treatment.  As to this element, plaintiff relies on an email from a Communication Program

17   Specialist named Horace Hinshaw, who was not plaintiff's supervisor, referring to plaintiff as

18   "the 'premier' [Postal Vision] Editor of all the Area [Postal Vision] Editors."  (See Lintz Decl.

19   ¶ 4 & Ex. 2; see also Pl.'s Opp'n at 10.)  Defendant does not generally contend otherwise, except

20   that to the extent that plaintiff's race discrimination claim is based on a failure to promote,

21   defendant contends that plaintiff was not qualified for certain positions.  (See Def.'s Memo. at 8-

22   9; Def.'s Reply Br. at 7.)

23           Plaintiff contends that she suffered two adverse employment actions:

24   (1) discontinuation of her position as a Postal Vision Coordinator effective July 9, 2007; and

25   ////

26   ////

21

1   (2) her termination from employment effective November 14, 2008.[21]   (See Pl.'s Opp'n at 10;

2   Lintz Decl., Exs. 3-4.)  Defendant does not dispute that these actions constitute adverse

3   employment actions.  See Aragon, 292 F.3d at 660 (stating that "being laid off from one's

4   position certainly constitutes an adverse employment action").

5          The parties' dispute as to plaintiff's prima facie claim centers on whether there is

6   any evidence of race discrimination or whether similarly situated, non-African American

7   employees were treated more favorably than plaintiff.  (See Def.'s Memo. at 8-9.)  As to whether

8   circumstances surrounding the adverse employment action give rise to an inference of

9   discrimination, defendant correctly contends that plaintiff has not produced or cited to evidence

10  suggesting race-based discrimination.  (Def.'s Memo. at 8.)  Plaintiff has not identified any

11  evidence suggesting that the discontinuation of her position as a Postal Vision Coordinator or her

12  subsequent termination were motivated by plaintiff's race.  (See Pl.'s Opp'n at 10.)

13         A somewhat closer question is presented by plaintiff's argument that similarly

14  situated non-African American individuals were more favorably treated than plaintiff.  See, e.g.,

15  Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) ("In order to show that the 'employees'

16  allegedly receiving more favorable treatment are similarly situated (the fourth element necessary

17  to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate,

18  at the least, that they are similarly situated to those employees in all material respects.") (citing

19  Aragon, 292 F.3d at 660).  In that regard, plaintiff contends that: (1) James Wigdel, a Caucasian

20  male, was hired as a Communications Program Specialist into plaintiff's former unit shortly after

21  plaintiff's position as Postal Vision Coordinator was eliminated; and (2) Pla Mooua (also

22  referred to as Pla Moua), a woman apparently of "Asian or Chinese ancestry," was hired to work

23  as a clerk in USPS's Elk Grove, California office despite plaintiff's request for a reasonable

24  ─────────────

25  [21]  Plaintiff's written opposition suggests by handwritten interlineation that her "medical
    treatment [was] rescinded" in July 2007 when her Postal Vision Coordinator position was
    eliminated. (Pl.'s Opp'n at 10.)  However, the exhibit cited to by plaintiff does not indicate that any

26  of plaintiff's medical treatment was subject to termination.  (See Lintz Decl., Ex. 3.)

1   accommodation, and plaintiff was never offered that clerk job.  (Pl.'s Opp'n at 10; Lintz Decl.

2   ¶¶ 6, 11.)  Defendant also argues that an employee named Joanne Whitfield was not a similarly

3   situated employee; however, plaintiff offers no argument in her written opposition as to

4   Whitfield.  (Compare Def.'s Memo. at 8-9 with Pl.'s Opp'n at 10.)  Each employee is addressed

5   in turn.

6                              a.     James Wigdel

7          Defendant does not dispute that Wigdel was a "white male" who was hired for the

8   position of Communications Program Specialist.  (See Def.'s SUMF ¶¶ 138-39; see also Pl.'s

9   Dep. at 76:2-22.)  However, defendant contends that the Communications Program Specialist

10  position was a supervisory position in relation to the Postal Vision Coordinator position in which

11  plaintiff worked, that the position entailed different job duties than plaintiff's position, that

12  plaintiff was unqualified for that management position, and that plaintiff did not apply for that

13  position.  (Pl.'s Memo. at 8-9.)

14         It is not entirely clear from the briefs whether the parties construe plaintiff's race

15  discrimination claim as a straightforward disparate treatment claim or a failure-to-promote claim

16  as far as Wigdel is concerned.  However, this aspect of plaintiff's race discrimination claim is a

17  failure-to-promote claim because plaintiff's claim is that Wigdel was hired for the supervisory

18  Communications Program Specialist position rather than plaintiff, not that plaintiff and Wigdel

19  engaged in similar conduct and were thereafter dissimilarly treated.  To the extent that plaintiff's

20  claim is a simple disparate treatment claim, plaintiff has not explained or demonstrated how she

21  and Wigdel were similarly situated, and defendant is entitled to summary judgment in that

22  regard.

23         To the extent plaintiff's claim is a failure-to-promote claim, plaintiff produced no

24  evidence demonstrating that she actually applied for the Communications Program Specialist

25  position, and an application for a position is an element of a prima facie failure-to-promote

26  claim.  Dominguez-Curry, 424 F.3d at 1037.  Plaintiff's failure-to-promote claim premised on

1  defendant's treatment of Wigdel fails for this reason alone.[22]

2          Additionally, defendant contends that plaintiff was not qualified for the

3  Communications Program Specialist position, citing an affidavit of Don Smeraldi, Manager of

4  Public Affairs and Communications, that represents that plaintiff was not qualified for that

5  "professional management-level position." (Def.'s Ex. 10 at 2.) Smeraldi reasoned that plaintiff

6  had "not demonstrated the knowledge, skills and abilities to perform the job duties for that

7  position, such as serving as a District media spokesperson, writing news releases and newsletters,

8  coordinating the production of videos, etc." (Id.) Plaintiff counters that the only criteria for the

9  Communications Program Specialist position was status as a career employee with one year of

10 experience, citing to a Vacancy Announcement for the position. (See Lintz Decl., Ex. 33.)

11 However, the section in the Vacancy Announcement entitled "Persons Eligible to Apply" is

12 almost entirely illegible, although the court can discern that all "qualified" postal employees with

13 at least one year of some indiscernible type of service were eligible to apply. Moreover, a section

14 listing nine "Requirements" for the position, which might shed light on the term "qualified," is

15 entirely illegible. Without more, plaintiff has not met her burden to create a genuine dispute of

16 material fact in regards to whether she was qualified. In any event, as stated above, plaintiff

17 never applied for the position of Communications Program Specialist, which alone defeats

18 plaintiff's prima facie case.

19          b.    Pla Mooua

20          In furtherance of her race discrimination claim, plaintiff contends that Pla Mooua

21 was "a woman of apparently of Asian or Chinese ancestry" hired "as a clerk at the El Grove, CA

22 post office around October 2008." (Pl.'s Opp'n at 10.) Plaintiff contends that the "hiring of the

23 Asian or Chinese woman is significant because USPS had refused and failed to offer plaintiff the

24

25   [22] The undersigned notes that plaintiff appears to contend that USPS was obligated to notify her of the position into which Wigdel was hired, and failed to provide such notification. However, plaintiff cites to no legal authority for such a proposition in the context of a failure-to-promote claim
26 premised on race discrimination.

1   clerk job in Elk Grove despite plaintiff's requests for reasonable accommodation, and despite

2   USPS' legal duty to reasonably accommodate plaintiff." (Id.)  In regards to Mooua, plaintiff's

3   declaration, which was not objected to by defendant, states:

> On or about October, [sic] 1, 2008, I met Pla Mooua, a woman of Asian or
> Chinese ancestry, who was working as a window clerk at the Elk grove
> [sic], Ca [sic] post office.  Ms. Mooua told me that she had been recently
> hired.  I asked her if she has any injured [sic] and she said no.  Based on
> my 20 years of experience working for USPS, and their offer of a modified
> job that included duties of Lobby Director, I knew that I could have done
> that job within my medical restrictions in 2008, but this job vacancy never
> offered to me and I was never told about the vacancy.  I also lived nearby,
> so the job would have been much more convenient for me . . . .

9   (Lintz Decl. ¶ 11.)  Plaintiff cites to no other evidence addressed to the hiring of Mooua, and it

10  does not appear that plaintiff obtained a declaration from Mooua or otherwise conducted any

11  discovery in this regard.

12          At the outset, the undersigned notes that plaintiff's framing of her argument more

13  appropriately raises a disability discrimination claim based on a failure to provide a reasonable

14  accommodation than a race discrimination claim.  Nevertheless, the undersigned addresses

15  Mooua vis-a-vis plaintiff's race discrimination claim.

16          Defendant's moving papers do not address Mooua at all, and his reply brief

17  addresses Mooua only in the following vague manner, without identifying Mooua by name: "The

18  position near Elk Grove was not in her district, and as stated above Plaintiff repeated refused to

19  request a transfer.  Nor has Plaintiff identified the job duties for that position, when it first

20  became available, or any information about the individual filing [sic] the position."  (Def.'s

21  Reply Br. at 7.)

22          Despite the brevity of defendant's argument, it is well-taken.  In effect, defendant

23  challenges plaintiff's ability to demonstrate a genuine dispute of fact regarding whether Mooua

24  and plaintiff were similarly situated in all material respects.  Plaintiff simply offers her subjective

25  view of her ability to perform the clerk position at the Elk Grove office based on one visit to the

26  Elk Grove post office and her experience at USPS.  Plaintiff did not produce evidence of the job

25

1  qualifications or requirements for the particular clerk position.  Furthermore, plaintiff did not

2  produce any evidence substantiating a factual comparison between herself and Mooua, aside

3  from simply declaring that Mooua was not disabled and was "recently hired."  Accordingly,

4  defendant is entitled to summary judgment to the extent that plaintiff's race discrimination claim

5  is premised on the allegation that Mooua was treated more favorably than plaintiff.

6                            c.        <u>Joanne Whitfield</u>

7            Defendant notes that at some point plaintiff alleged or argued that Joanne

8  Whitfield, a now-retired "Writer-Editor" formerly with USPS, was a similarly situated employee

9  who was treated more favorably than plaintiff.  Defendant contends that Whitfield and plaintiff

10  were not similarly situated.  (<u>See</u> Def.'s Memo. at 8-9.)  Plaintiff's written opposition does not

11  address Whitfield in the context of plaintiff's race discrimination claim, and plaintiff did not

12  address Whitfield at the hearing.  Accordingly, the undersigned concludes that plaintiff

13  abandoned any previous contentions as to Whitfield insofar as plaintiff's race discrimination

14  claim is concerned.

15            Based on the foregoing, the undersigned recommends that defendant's motion for

16  summary judgment be granted as to plaintiff's race discrimination claim on the grounds that

17  plaintiff has not demonstrated a genuine dispute of material fact as to her prima facie claim.

18  Accordingly, defendant is entitled to a judgment in his favor on plaintiff's race discrimination

19  claim.

20                          2.        <u>Plaintiff's Rehabilitation Act Claim</u>

21            Plaintiff also claims that defendant violated Section 501 of the Rehabilitation Act

22  of 1973, 29 U.S.C. § 791, which "is the exclusive remedy for discrimination in employment by

23  the Postal Service on the basis of handicap."  <u>Boyd v. U.S. Postal Serv.</u>, 752 F.2d 410, 413 (9th

24  Cir. 1985); <u>see also</u> <u>Newland v. Dalton</u>, 81 F.3d 904, 906 n.1 (9th Cir. 1996).  Defendant moves

25  for summary judgment as to this claim.

26  ////

1          a.   Legal Standards

2          "Section 501 of the [Rehabilitation Act] announces a federal government policy to

3  prevent discrimination against the disabled in employment decisions, and expressly encourages

4  federal government employers to employ individuals with disabilities." Lopez v. Johnson, 333

5  F.3d 959, 961 (9th Cir. 2003) (per curiam). "Section 501 provides for two types of claims:

6  (1) non-affirmative action employment discrimination claims based upon 29 U.S.C. § 791(g),

7  and (2) claims based upon the government's failure to reasonably accommodate an employee, as

8  required under 29 U.S.C. § 791(b)." Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1206 (S.D. Cal.

9  2002), aff'd, 70 Fed. Appx. 469 (9th Cir. 2003). Plaintiff raises both types of claims.

10         To state a prima facie claim of disability discrimination under the Rehabilitation

11 Act, "a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise

12 qualified for employment, and (3) suffered discrimination because of her disability." Walton v.

13 U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007).[23] If the plaintiff makes a prima facie

14 showing, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason

15 for the employment decision. The burden then shifts back to the plaintiff to produce evidence

16 sufficient to allow a reasonable factfinder to conclude that plaintiff's articulated reason is

17 pretextual." Wilborn, 222 F. Supp. 2d at 1207.

18         In regards to a reasonable accommodation claim, the Rehabilitation Act requires

19 government agencies to reasonably accommodate an employee's disability. See Buckingham v.

20         [23] "Section 501 borrows its substantive standards from the Americans with Disabilities Act

21 (ADA)." Lopez, 333 F.3d at 961 (citing 29 U.S.C. § 791(g)); see also Coons v. Sec'y of U.S. Dep't
   of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of

22 discrimination violated the Rehabilitation Act are the same standards applied under the Americans
   with Disabilities Act ("ADA").").  "According to the ADA, an individual is disabled if that

23 individual (1) has a physical or mental impairment that substantially limits one or more of the
   individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having

24 such an impairment." Coons, 383 F.3d at 884; 42 U.S.C. § 12102(1); accord 29 C.F.R. § 1630.2(g).
   "The ADA defines a 'qualified individual' as an individual 'with a disability who, with or without

25 reasonable accommodation, can perform the essential functions of the employment position that such
   individual holds or desires.'" Dark v. Curry County, 451 F.3d 1078, 1086 (9th Cir. 2006) (emphasis

26 omitted) (citing 42 U.S.C. § 12111(8)); accord 29 C.F.R. § 1630.2(m).

1   United States, 998 F.2d 735, 739 (9th Cir. 1993).  When a plaintiff alleges a failure to

2   accommodate a disability under the Rehabilitation Act, the burden is on the plaintiff to prove that

3   he or she is a qualified individual with a disability in that "with or without reasonable

4   accommodation, [she could] perform the essential functions of [her] job."  See id. at 739-40.

5   Then, if accommodation of the plaintiff as a qualified individual with a disability is required to

6   enable the plaintiff to perform the essential functions of the job, the plaintiff must provide

7   evidence sufficient to make at least a facial showing that reasonable accommodation is possible.

8   Id. at 740; accord Bateman v. U.S. Postal Serv., 151 F. Supp. 2d 1131, 1143 (N.D. Cal. 2001).  If

9   in response to the plaintiff's evidence that reasonable accommodation can be made, the employer

10  presents credible evidence that reasonable accommodation is not possible or practicable, the

11  plaintiff bears the burden of coming forward with evidence that suggests that accommodation

12  may in fact be reasonably made.  See Sisson v. Helms, 751 F.2d 991, 993 (9th Cir. 1985).

13              b.      Even Assuming that Plaintiff Demonstrated A Prima Facie
                       Discrimination Claim, Defendant is Entitled to Summary Judgment
14

15          The parties greatly contest whether plaintiff established a prima facie claim of

16  disability discrimination under the Rehabilitation Act.  However, even assuming that plaintiff

17  met her initial burden, defendant has provided legitimate non-discriminatory reasons for the

18  adverse employment actions at issue, and plaintiff has not created a genuine dispute of material

19  fact that defendant's reasons were pretextual, whether based on direct or indirect evidence.

20          The two adverse employment actions at issue are: (1) the elimination of plaintiff's

21  Postal Vision Coordinator position and the reassignment of plaintiff to the position of Lobby

22  Director in the Mountain View Post Office; (2) plaintiff's termination in November 2008.  In

23  regards to elimination of plaintiff's position as Postal Vision Coordinator, defendant contends:

24              [Don] Smeraldi made the decision to end the Postal Vision Coordinator
                position based on the information provided by Ms. Fernandez that the
25              Sacramento District needed her office space back for its own operations,
                that he did not have the work hours to cover her time, that there was no
26              one to supervise her work at the San Francisco office and she was a craft

1               employee whose hours had to be recorded, and the San Francisco District
2               was reviewing their work hours under the reassessment process, including
                how they handled their limited duty employees.

3  (Def.'s SUMF ¶ 33 (citing Def.'s Ex. 10 at 2-3).)  In terms of the termination of plaintiff's

4  employment with USPS, defendant contends: "Ultimately, Plaintiff was terminated pursuant to

5  USPS policy, which states that termination is appropriate when an employee has been absent for

6  a period of one year, and it does not appear that the employee will be able to report to work

7  within a reasonable time following that period."  (Def.'s Memo. at 10 (citing Def.'s SUMF ¶ 56

8  (citing Def.'s Ex. 2)).)[24]  For the purpose of a motion for summary judgment, defendant's reasons

9  are legitimate and do not discriminate on the basis of plaintiff's disability.

10          Accordingly, the burden shifts to plaintiff to raise a genuine dispute of material

11  fact concerning whether defendant's facially legitimate reasons are a pretext.  "A plaintiff can

12  prove pretext either '(1) indirectly, by showing that the employer's proffered explanation is

13  unworthy of credence because it is internally inconsistent or otherwise not believable, or

14  (2) directly, by showing that unlawful discrimination more likely motivated the employer.'"

15  McCoy v. Dep't of Army, 789 F. Supp. 2d 1221, 1230 (E.D. Cal. 2011) (footnote omitted)

16  (citing Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1127 (9th Cir. 2000)), reconsideration

17
18     [24] In response to an interrogatory requesting the basis for plaintiff's termination, defendant answered that "Plaintiff left work on June 22, 2007, and did not return.  She had no sick leave time available, and was placed in leave without pay status."  (Def.'s Ex. 2 at 2.)  Defendant contends that
19  plaintiff reached 365 days of leave without pay, and in turn quoted the following excerpt of USPS's Employee and Labor Relations Manual regarding termination:
20
21     At the expiration of 1 year of continuous absence without pay, an employee who has been absent because of illness may be separated for disability.  This
22     action is not mandatory, however, and if there is reason to believe the employee will recover within a reasonable length of time beyond the 1-year
23     period, the employee may be granted additional leave in 30-day periods, not to exceed 90 days.  If the employee's condition indicates that LWOP beyond
24     that period is necessary incident to full recovery, the postal official must submit a comprehensive report to the area manager of Human Resources with
25     appropriate recommendation and retain the employee on the rolls pending a decision.

26  (Def.'s Ex. 2 at 2-3.)

denied, 2011 WL 6749806 (E.D. Cal. Dec. 22, 2011) (unpublished).

Here, plaintiff attempts to show pretext through both direct and indirect evidence. (See Pl.'s Opp'n at 11-14.)  In regards to direct evidence, plaintiff contends that two USPS employees made derogatory remarks about plaintiff.  First, plaintiff contends that in 2003, Horace Hinshaw, a Communications Specialist in the San Francisco District who plaintiff asserts was not plaintiff's supervisor,[25] told plaintiff that, in reference to plaintiff and another employee, "disabled people are not very productive employees."  (See Pl.'s Opp'n at 11-12; Lintz Decl. ¶ 4.)  Second, plaintiff contends that around May 2007, Linda Russo, an investigator with the Office of the Inspector General who was investigating allegations that plaintiff committed time card fraud, told plaintiff in an "angry tone" that plaintiff was not disabled and that plaintiff should be working eight hours per day instead of seven hours per day.  (Pl.'s Opp'n at 12; Lintz Decl. ¶ 7.)[26]

In short, plaintiff has not shown a triable issue of fact as to whether discrimination was, based on direct evidence, "more likely" USPS's motivation to discontinue the Postal Vision Coordinator position or terminate plaintiff.  As defendant argues, neither Hinshaw nor Russo was responsible for making either adverse employment decision at issue, and Hinshaw had retired by the time plaintiff's Postal Vision Coordinator position was eliminated.  Moreover, Hinshaw's remark was, according to plaintiff, made in the year 2003, approximately four years before either employment decision at issue.  Finally, as defendant argues, both of these alleged remarks are "stray remarks" by non-decisionmakers that are insufficient to preclude summary judgment.  See, e.g., Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir. 1990).

---

[25]  Defendant contends that Hinshaw was plaintiff's supervisor in or around 2007.

[26]  Defendant contends, in passing, that plaintiff's purported direct evidence of discrimination contradicts plaintiff's prior deposition testimony.  (Def.'s Reply Br. at 6.)  However, defendant has not explained this argument or cited any comparative deposition testimony.  Without more, defendant's argument is unpersuasive.

1     Turning to the matter of "indirect" evidence of alleged pretext, plaintiff offers a

2   laundry-list of arguments.  First, plaintiff argues that "defendant's claim that plaintiff's job as

3   Postal Vision Coordinator was eliminated because the Sacramento District needed plaintiff's

4   office space" is contradicted by: (1) "USPS Sacramento manager Winnie Groux, who stated in

5   her affidavit that she instructed Don Smeraldi to eliminate plaintiff's job because the district did

6   not have a vacant position for Postal Vision"; and (2) "USPS Sacramento manager Rosemarie

7   Fernandez, who stated in an affidavit that the Sacramento District was in the process of

8   activating Postal Vision."  (Pl.'s Opp'n at 12 (citing Lintz Decl., Exs. 12-13).)  Although

9   defendant does not directly address plaintiff's argument, plaintiff's evidence does not suggest

10  pretext.  Groux's affidavit does not actually contradict the reason for eliminating plaintiff's

11  Postal Vision Coordinator position based on the need for office space in Sacramento, and is

12  consistent with USPS's stated reason that there were insufficient hours to cover plaintiff's work

13  in Sacramento.  (See Lintz Decl., Ex. 12 at 1 ("I advised [Don Smeraldi] that SF did not have a

14  position for work in Sacramento or for the area office, that SF was not funded for these hours,

15  and since the work being done wasn't for SF, that the detail should end.").)  Additionally,

16  Fernandez's affidavit describes Fernandez's discussions with Smeraldi in 2005 regarding

17  accommodating plaintiff by permitting her to work several days per week in the Sacramento area,

18  and states that the Sacramento office was activating the Postal Vision process in or around 2005,

19  and not in 2007 when plaintiff's position was eliminated.  (Lintz Decl., Ex. 13 at 1 ("[Don

20  Smeraldi] states that the complainant could assist from the West Sacramento facility with our

21  Postal Vision process which was in the process of being activated.").)  Moreover, Fernandez's

22  affidavit states that in June 2007, the space in which plaintiff was working was needed for

23  "Sacramento District activities" following appointment of a new Postmaster of Sacramento.  (Id.)

24     Second, plaintiff asserts that "[d]efendant's claim that plaintiff's job as Postal

25  Vision Coordinator was eliminated because Don Smeraldi did not have sufficient hours to cover

26  her work" is contradicted by: (1) "Smeraldi's own affidavit, in which he admits that plaintiff's

31

1    time had always been covered by plaintiff's original office, Mountain View, over 100 miles away

2    and in a different district from Smeraldi's Sacramento office"; and (2) the "hiring of Jim Wigdel

3    in plaintiff's former unit shortly after plaintiff's job was eliminated." (Pl.'s Opp'n at 12 (citing

4    Lintz Decl., Exs. 9, 14-15).)  Defendant correctly argues that plaintiff's evidence does not

5    contradict USPS's stated reasons for eliminating the Postal Vision Coordinator position. (Def.'s

6    Reply Br. at 8.)  The fact that plaintiff's work hours were funded through the Mountain View

7    office does not actually contradict Smeraldi's statement that he no longer had sufficient funded

8    hours to cover plaintiff's work in 2007.  Additionally, the hiring of Wigdel in a position that

9    would have *supervised* plaintiff's Postal Vision Coordinator position does not actually contradict

10   Smeraldi's statement that there were insufficient funded hours to cover *plaintiff's* work in 2007.

11        Third, plaintiff challenges the truth of Smeraldi's assertion that no employee in

12   San Francisco could supervise plaintiff.  Plaintiff claims that Wigdel and Joanne Whitfield could

13   have supervised her. (Pl.'s Opp'n at 12-13 (citing Lint Decl. ¶ 6 & Ex. 16).)  Although plaintiff

14   suggests that Wigdel could have supervised her, Wigdel was hired or promoted after plaintiff's

15   Postal Vision Coordinator position was eliminated. (Lintz Decl. ¶ 6.)  Additionally, plaintiff

16   does not support her contention regarding Whitfield with any evidence.  In short, plaintiff's

17   argument regarding Wigdel and Whitfield does not contradict Smeraldi's statement that there

18   was no available supervisor to supervise plaintiff at the time plaintiff's Postal Vision Coordinator

19   position was eliminated.

20        Fourth, plaintiff claims that pretext is established by the fact that she had been

21   retaliated against in July 2007, when her Postal Vision Coordinator was eliminated one month

22   after plaintiff requested a reasonable accommodation. (Pl.'s Opp'n at 13 (citing Lintz Decl.,

23   Ex. 18).)  Defendant persuasively counters that plaintiff's suggestion of pretext fails because

24   plaintiff was notified of the elimination of her Postal Vision Coordinator position *before* she

25   requested a reasonable accommodation on June 8, 2007. (Def.'s Reply Br. at 7-8.)  Defendant's

26   responses to plaintiff's interrogatories reflect that Smeraldi sent an email to plaintiff on May 2,

1   2007, advising plaintiff that plaintiff's position as Postal Vision Coordinator would be ending

2   and that she would have to return to her permanent position as a limited duty carrier at her

3   permanent duty station in Mountain View, California if no other station could pay plaintiff's

4   hours as Postal Vision Coordinator.  (See Def.'s Ex. 2 (Response to Pl.'s Interrogs., Set One,

5   Nos. 5, 14).)  Plaintiff has not disputed the representation that Smeraldi sent such an email to

6   plaintiff on May 2, 2007.  (Compare Def.'s SUMF ¶ 41, with Pl.'s SDF, Fact No. 41.)  Because

7   plaintiff was advised of the elimination of her position as Postal Vision Coordinator prior to her

8   June 8, 2007 request for a reasonable accommodation, plaintiff's suggestion of pretext premised

9   on alleged retaliation fails.

10          Fifth, plaintiff contends that pretext is demonstrated by the close temporal

11  proximity between plaintiff's filing of a workers compensation claim on June 25, 2007, and the

12  July 3, 2007 notice that her position as Postal Vision Coordinator was being eliminated.  (Pl.'s

13  Opp'n at 8 (citing Lintz Decl. ¶ 10 & Exs. 3, 23).)  Defendant counters that plaintiff's suggestion

14  of pretext is illogical because plaintiff filed her workers compensation claim *after* plaintiff was

15  notified that her Postal Vision Coordinator position was eliminated and after plaintiff moved to

16  the position of Lobby Director.  (Def.'s Reply Br. at 7.)  Evidence in the record demonstrates that

17  plaintiff was advised as early as May 2, 2007, that her position as Postal Vision Coordinator

18  would end; that plaintiff began working as a Lobby Director on June 22, 2007; that plaintiff

19  allegedly suffered an on-the-job injury on June 22, 2007; and that plaintiff filed her workers

20  compensation claim on June 27, 2007.  (See Def.'s Exs. 2 at 4 and 6; Lintz Decl., Ex. 23; see

21  also Third Am. Compl. ¶¶ 13, 15.)  Accordingly, defendant's argument is well-taken.

22          Sixth, plaintiff claims that in terminating plaintiff, defendant violated USPS's

23  own established procedures stated in "ELM 546.142" and "ELM 365.242(c)" by failing to "make

24  every effort" to assign plaintiff to a limited duty job consistent with her medical restrictions, and

25  by failing to submit a "comprehensive report" with appropriate recommendations before

26  ////

33

terminating an employee on workers compensation.[27]  (Pl.'s Opp'n at 8, 13 (citing Lintz Decl.

¶¶ 10, 12 & Exs. 6, 7, 9, 17).)  Defendant argues that the above-cited internal regulations either

do not apply to plaintiff or were followed.[28]  (Def.'s Reply Br. at 3, 7.)

        With respect to ELM 546.142, defendant contends, citing only his interrogatory

responses, that "ELM 546.142 is a provision which applies to employees on [*sic*] who are injured

on duty and who *fully* recover from an injury or disability within one year of initial or recurrent

compensation.  This provision did not apply to Plaintiff, and thus it [*sic*] USPS took no steps in

this regard."  (Def.'s Ex. 2 at 6 (emphasis added); <u>see also</u> Def.'s Reply Br. at 3.)  However, as

plaintiff correctly notes, ELM 546.142 addresses USPS's obligations when an "employee has

*partially* overcome the injury or disability."  (Lintz Decl., Ex. 8 at 1 (emphasis added).)  In

relevant part, ELM 546.142 provides:

> When an employee has partially overcome the injury or disability,
> the Postal Service has the following obligation:
>
> a.     *Current Employees*.  When an employee has partially
>        overcome a compensable disability, the Postal Service must
>        make every effort toward assigning the employee to limited
>        duty consistent with the employee's medically defined
>        work limitation tolerance (see 546.611).  In assigning such
>        limited duty, the Postal Service should minimize any
>        adverse or disruptive impact on the employee.  The
>        following considerations must be made in effecting such
>        limited duty assignments:
>
> . . .
>
>        (4)     An employee may be assigned limited duty outside
>                of the work facility to which the employee is
>                normally assigned only if there is not adequate work
>                available within the employee's work limitation
>                tolerances at the employee's facility.  In such
>                instances, every effort must be made to assign the

---

[27]  The acronym "ELM" appears to refer to USPS's Employee and Labor Relations Manual.

[28]  Defendant did not submit a copy of these internal regulations.  Instead, he relies on his
own interpretation of these regulations stated in his responses to interrogatories.  In any event,
plaintiff submitted a copy of what appear to be the relevant regulations, and defendant has not
objected to plaintiff's exhibits.  (<u>See</u> Lintz Decl., Exs. 7-8.)

1
2
3

                             employee to work within the employee's craft within the employee's regular schedule and as near as possible to the regular work facility to which the employee is normally assigned.

(Id.)

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

          Plaintiff's argues that defendant violated ELM 546.142, and the violation of an internal regulation undermines defendant's proffered, legitimate reasons for terminating plaintiff. See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1214 (9th Cir. 2008) (noting that reasonable jurors could conclude that violation of an employer's handbook in firing employees undermines the credibility of the proffered legitimate, nondiscriminatory reason for termination); EEOC v. Chevron Phillips Chem. Co., 570 F.3d 606, 623-24 (5th Cir. 2009) (finding a triable issue as to pretext arising from an employer's arguable failure to follow its internal procedures in firing a disabled employee); cf. Bass v. Bd. of County Comm'rs, Orange County, 256 F.3d 1095, 1108 (11th Cir. 2001) ("An employer's violation of its own normal hiring procedure may be evidence of pretext.").  Plaintiff appears to argue that defendant transferred plaintiff from the position of Postal Vision Coordinator in Sacramento to the position of Lobby Director in Mountain View, a position that did not account for plaintiff's medical restrictions and also required plaintiff to commute in a manner that exacerbated her condition.  In turn, she appears to argue that the transfer caused plaintiff to leave work and ultimately be terminated in violation of USPS's internal regulations.  Defendant's response incorrectly focuses on whether plaintiff "fully" recovered and whether ELM 546.142 applied at all; the regulation clearly addresses "partially" recovered employees and applies to plaintiff.

21
22
23
24
25
26

         Despite defendant's rather meager response to plaintiff's argument and his interrogatory response stating that USPS took no steps to comply with ELM 546.142 (Def.'s Ex. 2 at 6), the evidence still does not reflect a genuine dispute of material fact in regards to whether defendant violated ELM 546.142.  Defendant presented undisputed evidence that there was not adequate work, space, and funding in Sacramento to permit plaintiff to continue to work in Sacramento as desired.  Moreover, it is undisputed that regardless of where plaintiff physically

1    worked, plaintiff's permanent duty station was located in Mountain View, California.  (Def.'s

2    SUMF ¶¶ 7, 42.)  Defendant returned plaintiff to her permanent duty station, in the position of

3    Lobby Director.  Plaintiff has not presented evidence that suggests that defendant did not make

4    every effort to reassign plaintiff to work along the lines required by ELM 546.142.  Accordingly,

5    plaintiff's argument premised on ELM 546.142 is unpersuasive.

6             In regards to "ELM 365.242(c)," it appears that plaintiff intended to cite to

7    "ELM 365.342(c)," which is included as an exhibit to plaintiff's declaration.  (Lintz Decl.,

8    Ex. 7.)  ELM 365.342(a) generally provides that an employee may be separated for disability

9    after one year of continuous absence without pay.  However, ELM 365.342(c) provides: "Before

10   any employee on the rolls of the [Office of Workers' Compensation Programs] can be separated,

11   the requesting postal official must submit a comprehensive report through channels to the area

12   manager of Human Relations, with appropriate recommendations.  The employee must be

13   retained on the rolls of the Postal Service pending a decision."  Plaintiff contends that the

14   "comprehensive report" was never submitted, but submitted no evidence substantiating that

15   contention.  (Lintz Decl. ¶ 12.)  The exhibits cited by plaintiff do not support the contention that

16   the required report was not submitted.  Oddly, defendant has not submitted any report that he

17   contends is the requisite comprehensive report.  Instead, defendant argues that plaintiff failed to

18   produce evidence on this issue and that the Mountain View Postmaster issued a Letter of

19   Decision that provided reasons for separation based on available information.  (Def.'s Reply Br.

20   at 3 (citing, in part, Def.'s SUMF ¶ 60).)  In any event, it is not defendant's burden to prove the

21   absence of pretext—it is plaintiff's burden to raise a genuine dispute of material fact as to

22   pretext, and plaintiff failed in this regard.

23             Seventh, plaintiff asserts that pretext is demonstrated by defendant's failure to

24   reasonably accommodate plaintiff's disability, and his failure to engage in an interactive process

25   with plaintiff to determine how plaintiff's disability could be reasonably accommodated.  (Pl.'s

26   Opp'n at 8 (citing Lintz Decl. ¶¶ 10, 12 & Exs. 5, 8).)  Defendant does not specifically address

1   this aspect of plaintiff's pretext argument.  In any event, plaintiff's argument regarding the

2   alleged failures to accommodate plaintiff and engage in an interactive process are addressed

3   below.  In short, because the undersigned concludes that defendant is entitled to summary

4   judgment on plaintiff's reasonable accommodation claim, plaintiff's argument regarding pretext

5   also fails.

6           Eighth, plaintiff claims that pretext is demonstrated by the fact that USPS hired

7   Wigdel and Mooua after telling plaintiff that no vacant positions were available for her.  (See

8   Pl.'s Opp'n at 9 (citing Lintz Decl. ¶ 11 & Ex. 9).)  Although defendant does not address the

9   hiring of Mooua, he does contend that the hiring Wigdel in a position of "superior rank" does not

10  contradict Smeraldi's stated reasons for eliminating the Postal Vision Coordinator position or the

11  reasons stated for ultimately terminating plaintiff.  Defendant's argument as to Wigdel is well-

12  taken.  In regards to the hiring of Mooua, plaintiff has not adequately supported with evidence

13  her contention that she should have been given, and could have performed, the window clerk

14  position in the Elk Grove office such that the hiring of Mooua raises concerns of pretext.

15  Accordingly, the hiring of Wigdel and Mooua do not create a genuine dispute of material fact as

16  to the issue of pretext.

17          For the foregoing reasons, the undersigned concludes that plaintiff failed to create

18  a genuine dispute of material fact in regards to whether defendant's reasons for eliminating her

19  Postal Vision Coordinator position, and ultimately terminating plaintiff, were pretextual.

20  Accordingly, defendant is entitled to summary judgment with respect to plaintiff's disability

21  discrimination claim.

22              c.   Plaintiff's Reasonable Accommodation Claim

23          Plaintiff claims that defendant failed to reasonably accommodate plaintiff's

24  disabilities.  As an initial matter, the undersigned finds unpersuasive defendant's argument that

25  plaintiff failed to demonstrate genuine disputes of material fact as to whether plaintiff was

26  disabled, whether plaintiff was a qualified employee, and whether plaintiff actually requested a

37

1  reasonable accommodation.  Plaintiff submitted numerous medical records and recommendations

2  for work modifications that substantiate conditions implicating plaintiff's back, neck, and

3  shoulder, at least in a manner sufficient to survive summary judgment.  Additionally, plaintiff has

4  provided some evidence that she was a qualified employee; for example, Horace Hinshaw's

5  email complimenting plaintiff's performance.

6          In any event, defendant persuasively argues that USPS actually attempted to

7  accommodate plaintiff by employing her as a Postal Vision Coordinator.  Furthermore, after

8  USPS could not longer fund or otherwise support the Postal Vision Coordinator position at the

9  Sacramento location, USPS returned plaintiff to her permanent duty station in Mountain View

10  and offered plaintiff employment as a Lobby Director in Mountain View, with duties tailored to

11  plaintiff's limitations.  Plaintiff accepted this position under protest and subsequently requested

12  an accommodation based on her commute from her home in Elk Grove to Mountain View.

13  Shortly after starting as the Lobby Director, plaintiff allegedly suffered a work injury and never

14  returned to work.

15          Defendant argues that the only limitation not accommodated by USPS was

16  plaintiff's commute time, and that USPS was under no obligation to accommodate plaintiff's

17  commute time.  Plaintiff has not sufficiently disputed this argument with evidence and legal

18  authority.  Additionally, defendant contends that plaintiff's supervisor encouraged plaintiff to

19  officially seek a transfer from her permanent duty station in Mountain View to a location closer

20  to plaintiff's home in Elk Grove, but that plaintiff refused because she would lose seniority and

21  some work hours.  (Def.'s SUMF ¶¶ 41-42.)  Instead, plaintiff implicitly argues that a reasonable

22  accommodation would have been to permit plaintiff to work in Sacramento in a position for

23  which USPS lacked funding, hours, space, and supervision.  As defendant argues, such an

24  accommodation simply would not be reasonable, and plaintiff has not produced evidence

25  suggesting how such an accommodation would be reasonable.  Rather, plaintiff relies on the

26  misplaced and factually deficient argument that Wigdel and Mooua were hired into positions that

1  plaintiff could have performed.  Plaintiff has not demonstrated that a genuine dispute of material

2  fact exists as to whether reasonable accommodation was possible.  Accordingly, defendant is

3  entitled to summary judgment on plaintiff's reasonable accommodation claim.

4          3.      Plaintiff's Retaliation Claim

5          Finally, defendant moves for summary judgment as to plaintiff's claims of

6  retaliation under Title VII and the Rehabilitation Act.  (Def.'s Memo. at 11-12.)  The parties

7  address these claims together in their briefs.  Because of the similarity of the applicable standards

8  under either statutory framework, the undersigned also addresses the retaliation claims together.

9          "Title VII prohibits, among other things, retaliation against an employee for

10  making a charge or otherwise participating in a Title VII proceeding."  Nilsson v. City of Mesa,

11  503 F.3d 947, 953 (9th Cir. 2007) (citing 42 U.S.C. § 2000e-3(a)).  "To establish a claim of

12  retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the

13  plaintiff suffered an adverse employment action, and (3) there was a causal link between the

14  plaintiff's protected activity and the adverse employment action."  Poland v. Chertoff, 494 F.3d

15  1174, 1179-80 (9th Cir. 2007); accord Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (9th

16  Cir. 2008).  If the plaintiff establishes a prima facie case of retaliation, "the burden shifts to the

17  defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff

18  must produce evidence to show that the stated reasons were a pretext for retaliation."  Surrell v.

19  Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008); accord Nilsson, 503 F.3d at 954.

20          Although the Rehabilitation Act, 29 U.S.C. § 791, does not contain its own anti-

21  retaliation provision, it expressly incorporates the anti-retaliation provision found in Title I of the

22  Americans With Disabilities Act of 1990 ("ADA"), which appears at 42 U.S.C. § 12203.  See 29

23  U.S.C. § 791(g); see also McCoy, 789 F. Supp. 2d at 1234.  Similar to a Title VII retaliation

24  claim, a prima facie case of retaliation under the Rehabilitation Act "requires a plaintiff to show:

25  (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link

26  between the two."  Coons, 383 F.3d at 887 (citation and quotation marks omitted).  A plaintiff

39

1    may attempt to prove his or her retaliation claim under the same burden-shifting framework as a

2    Title VII retaliation claim.  See id.

3                        a.        Plaintiff's Prima Facie Claim

4                  In regards to plaintiff's prima facie claim, the parties contest whether: (1) plaintiff

5    engaged in protected activity; and (2) whether plaintiff has demonstrated a genuine dispute of

6    material fact as to causation.  In terms of protected activity, plaintiff identifies three instances in

7    which she engaged in protected activity.  First, plaintiff claims that she engaged in protected

8    activity in June 2007 when she requested a reasonable accommodation for her disability.  (Pl.'s

9    Opp'n at 14 (citing Lintz Decl., Ex. 18).)  Second, plaintiff alleges that she engaged in protected

10   activity on October 5, 2007, when she filed an EEO complaint alleging discrimination on the

11   basis of disability and race.  (Pl.'s Opp'n at 14 (citing Lintz Decl., Ex. 19).)  Third, plaintiff

12   alleges that she engaged in protected activity on May 7, 2008, when her physician, R. Thomas

13   Grotz, M.D., requested by letter a reasonable accommodation on plaintiff's behalf (Pl.'s Opp'n at

14   14 (citing Lintz Decl., Ex. 1)).

15                 In terms of whether plaintiff engaged in protected activity, defendant only argues

16   that plaintiff has not provided authority for the "proposition that making a request for reasonable

17   accommodation is a 'protected activity' for purposes of a retaliation claim."  (Def.'s Reply Br.

18   at 8.)  Defendant's argument is necessarily addressed to plaintiff's claims of retaliation under the

19   Rehabilitation Act.  Defendant's argument that a request for a reasonable accommodation is not

20   protected activity under the Rehabilitation Act is plainly foreclosed by controlling Ninth Circuit

21   authority.  In Coons v. Secretary of the U.S. Department of Treasury, the Ninth Circuit Court of

22   Appeals held that the appellant, an employee with the Internal Revenue Service who alleged that

23   he was demoted in response to his request for a reasonable accommodation, "was engaged in a

24   protected activity when he requested that the IRS make reasonable accommodations for his

25   alleged disability."  383 F.3d at 887.

26   ////

                                                   40

1    Before addressing causation, the undersigned notes that the parties do not appear

2  to dispute that plaintiff ultimately suffered adverse employment actions.  Specifically, plaintiff

3  alleges adverse employment actions consisting of: (1) elimination of her position as a Postal

4  Vision Coordinator effective July 9, 2007; and (2) termination of her employment effective

5  November 14, 2008.  (See Pl.'s Opp'n at 14.)  Plaintiff's arguments also implicate an adverse

6  employment action in the form of transmission of a letter entitled "Notice of Proposed

7  Separation/Disability," dated July 16, 2008, which provided plaintiff with advance written notice

8  of USPS's proposed termination of plaintiff's employment.  (See id.; Lintz Decl., Ex. 30.)

9    Defendant contends that he is entitled to summary judgment in regards to

10 plaintiff's retaliation claims because plaintiff cannot demonstrate a genuine dispute of material

11 fact addressed to the causal link between plaintiff's protected activities and the adverse

12 employment actions.  See, e.g., Coons, 383 F.3d at 887 (stating in the context of a Rehabilitation

13 Act retaliation claim that a plaintiff must establish a causal link between a request for a

14 reasonable accommodation and the adverse employment action); Davis, 520 F.3d at 1094

15 (applying same causation standard to a Title VII retaliation claim).  Here, plaintiff relies only on

16 the temporal proximity between the alleged protected activities and the alleged adverse

17 employment actions to establish causation.  (See Pl.'s Opp'n at 14-15.)

18    Although a plaintiff may permissibly proceed on a temporal theory of causation,

19 see, e.g., Davis, 520 F.3d at 1094, the temporal proximity between an employer's knowledge of

20 protected activity and an adverse employment action must be "very close" to support a theory of

21 causation based on timing alone.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273

22 (2001) (per curiam) (holding that an adverse employment action taken 20 months after the

23 protected conduct "suggests, by itself, no causality at all"); accord Davis, 520 F.3d at 1094 ("We

24 have held that causation can be inferred from timing alone where an adverse employment action

25 follows on the heels of protected activity.") (citation and quotation marks omitted).  The Court of

26 Appeals has held that time gaps of nine and eighteen months between protected activity and

alleged retaliatory action were too long to support a finding of causation based on timing alone. See Manatt v. Bank of Am., 339 F.3d 792, 802 (9th Cir. 2003) (nine months); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (eighteen months).  However, it has found sufficient causation in retaliation claims involving a time gap of seven weeks, and has found gaps of nearly two months and three months probative of causation.  See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) (seven weeks); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (less than three months); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731-32 (9th Cir. 1986) (less than two months).

Here, plaintiff first contends that she participated in protected activity in June 2007, by requesting a reasonable accommodation for her disability, and that she was retaliated against in July 2007, when she was notified that her position as Postal Vision Coordinator was being eliminated.  (See Pl.'s Opp'n at 14.)  In terms of her request for a reasonable accommodation, plaintiff cites her letter dated June 8, 2007, through which plaintiff requested an accommodation to essentially modify her commute.  (See Lintz Decl., Ex. 18.)  As to the adverse employment action, plaintiff cites a letter from USPS dated July 3, 2007, which notified plaintiff that her "ad hoc assignment supporting the Postal Service's Postal Vision network formally comes to an end effective July 9, 2007."  (Id., Ex. 3.)

Defendant counters that regardless of the fact that plaintiff's alleged protected activity and adverse employment action occurred approximately one month apart, plaintiff cannot establish sufficient causation because plaintiff was notified of the elimination of her Postal Vision Coordinator position before she requested a reasonable accommodation on June 8, 2007. (Def.'s Reply Br. at 8.)  As noted above, defendant's responses to plaintiff's interrogatories represent that Don Smeraldi sent an email to plaintiff on May 2, 2007, advising plaintiff that her position as Postal Vision Coordinator would be ending and that she would have to return to her permanent position as a limited duty carrier at her permanent duty station in Mountain View, California if no other station could pay plaintiff's hours as Postal Vision Coordinator.  (See

42

1    Def.'s Ex. 2 (Response to Pl.'s Interrogs., Set One, Nos. 5, 14).)  Again, plaintiff has not

2    disputed the representation that Smeraldi sent such an email to her on May 2, 2007.  Because

3    plaintiff was advised of the termination of her position as Postal Vision Coordinator prior to her

4    June 8, 2007 request for a reasonable accommodation, plaintiff has not established causation by

5    temporal proximity alone.

6            Second, plaintiff alleges that she engaged in protected activity on October 5, 2007,

7    when she filed an EEO complaint alleging discrimination on the basis of disability and race.

8    (Pl.'s Opp'n at 14 (citing Lintz Decl., Ex. 19).)  She alleges resulting retaliation by USPS on

9    July 16, 2008, when USPS notified plaintiff of the proposed termination of her employment

10   through the letter entitled "Notice of Proposed Separation/Disability."  (Id. at 15 (citing Lintz

11   Decl., Ex. 30).)  Plaintiff contends that on November 19, 2007, Debra Powell, a Postmaster in

12   Mountain View, California, completed an EEO Investigative Affidavit in connection with

13   plaintiff's Agency Case No. 4F-956-0143-07 and, therefore "was aware of plaintiff's EEO

14   activity when the July 16, 2008 notice of plaintiff's proposed separation was issued."[29]  (Pl.'s

15   Opp'n at 15 (citing Lintz Decl., Ex. 20).)  Again, plaintiff still has not demonstrated causation by

16   timing alone—approximately eight months elapsed between the date that Powell executed her

17   affidavit and plaintiff was advised of her proposed termination.  This period of time is

18   insufficient to substantiate causation based on timing alone.

19           Third, plaintiff alleges that she engaged in protected activity on May 7, 2008,

20   when her physician, Dr. Grotz, requested a reasonable accommodation on plaintiff's behalf, and

21   that plaintiff was retaliated against when she was notified of her proposed termination of her

22   employment on July 16, 2008.  (Pl.'s Opp'n at 15 (citing Pl.'s Exs. 1, 30.)  Defendant failed to

23   address this aspect of plaintiff's opposition.  (See Def.'s Reply Br. at 8.)

24   ////

25           [29] Although plaintiff contends Powell completed her affidavit on October 19, 2007, Powell's
26   EEO Investigative Affidavit is actually dated November 19, 2007.  (Lintz Decl., Ex. 20.)

43

1            Upon independent review of the evidence submitted by plaintiff, plaintiff's

2  Exhibit 30 indeed consists of the "Notice of Proposed Separation/Disability" letter dated July 16,

3  2008.  (Lintz Decl., Ex. 30.)  However, plaintiff's Exhibit 1 does not reflect, as plaintiff

4  contends, a letter from Dr. Grotz to USPS dated May 7, 2008.  Instead, Exhibit 1 consists of a

5  letter from Dr. Grotz to USPS dated *June 25, 2007*, not May 7, 2008.  (Id., Ex. 1.)  Nevertheless,

6  plaintiff's Exhibit 26 is the May 7, 2008 letter from Dr. Grotz to Valerie Lloyd, a claims adjuster

7  in the U.S. Department of Labor, which addressed plaintiff's claimed injuries and purportedly

8  attached a medically recommended treatment plan.[30]  (Lintz Decl., Ex. 26.)  Without any

9  response to plaintiff's argument by defendant, the court cannot conclude that plaintiff failed to

10  create a genuine dispute of fact as to causation insofar as Dr. Grotz's letter is concerned.  The

11  time period between the date of Dr. Grotz's May 7, 2008 letter and USPS's July 16, 2008 notice

12  of proposed separation is approximately two months, which has been found sufficient to establish

13  causation based on timing alone.

14            Finally, plaintiff suggests in passing that her termination in late 2008 was an

15  adverse employment action that was the "culmination of retaliation that began with the 2007

16  elimination of plaintiff's job as Postal Vision Coordinator."  (Pl.'s Opp'n at 15.)  However, this

17  amorphous argument does not establish causation where plaintiff only relies on timing to

18  substantiate a connection between protected activity and an adverse employment action.

19           b.    Defendant's Legitimate, Non-Discriminatory Reasons, and
20                  Plaintiff's Showing of Pretext

21            Plaintiff has met her prima facie burden to show retaliation in response to Dr.

22  Grotz's request for a reasonable accommodation on May 7, 2008, and thus the burden shifts to

23  defendant to articulate a legitimate, non-retaliatory reason for the adverse employment actions

24  that followed.  As stated above, if defendant offers such a reason, plaintiff must then produce

25

26        [30]  Plaintiff did not submit the plan referenced in Dr. Grotz's letter.

1    evidence to show that the stated reasons were a pretext for retaliation.

2           As to the second and third prongs of the burden-shifting test, the parties rely on

3    their same respective arguments made in connection with plaintiff's disability discrimination

4    claim.  (Pl.'s Opp'n at 15; Def.'s Reply Br. at 9.)  The undersigned already concluded that

5    defendant met its burden to provide legitimate reasons for the adverse employment actions, and

6    that plaintiff failed to create a genuine dispute of material fact in regards to pretext.  Accordingly,

7    defendant is entitled to summary judgment with respect to plaintiff's retaliation claims.

8    IV.    <u>CONCLUSION</u>

9           For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

10          1.     Defendant's amended motion for summary judgment (Dkt. No. 72) be

11   granted.

12          2.     Judgment be entered in favor of defendant.

13          3.     The Clerk of Court be directed to close this case and vacate any remaining

14   dates.

15          These findings and recommendations are submitted to the United States District

16   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

17   days after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  <u>Id.</u>; <u>see also</u> E. Dist. Local Rule 304(b).

19   Such a document should be captioned "Objections to Magistrate Judge's Findings and

20   Recommendations."  Any response to the objections shall be filed with the court and served on

21   all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

22   ////

23   ////

24   ////

25   ////

26   ////

1   Failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

3   1153, 1156-57 (9th Cir. 1991).

4              IT IS SO RECOMMENDED.

5   DATED:  July 20, 2012

6

7

8   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

46